COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Felton, Judges Petty and Beales
Argued at Chesapeake, Virginia


ROBERT ALEXANDER SIERRA

                                                                            OPINION BY
v.        Record No. 0032-11-1                         JUDGE WILLIAM G. PETTY
                                                                         MARCH 20, 2012

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Randall D. Smith, Judge

A. Robinson Winn, Deputy Public Defender (Office of the Public
Defender, on brief), for appellant.

John W. Blanton, Assistant Attorney General (Kenneth T. Cuccinelli,
II, Attorney General, on brief), for appellee.


Robert Alexander Sierra was convicted in a bench trial of possession of a controlled

substance, in violation of Code § 18.2-250.  On appeal, Sierra challenges the sufficiency of the

evidence supporting his conviction, arguing that the evidence was insufficient to prove he was

aware of the character and presence of the particular substance found in his possession.[1]  For the

following reasons, we disagree with Sierra's arguments.  Therefore, we affirm his conviction.

_____

[1] Sierra's assignment of error reads specifically:

The Trial Court erred in that the evidence was insufficient to find
defendant guilty beyond a reasonable doubt of knowingly and
intentionally possessing methylphenidate.  The evidence was
insufficient to prove that defendant was aware of the character and
presence of the substance of the particular substance, i.e. Concerta.

Before the trial court, Sierra argued that "[n]amely, on the warrant it's Concerta.  On the
indictment it has the scientific name.  My argument is the Commonwealth has to prove that he
knowingly and intentionally possessed that particular substance."

I. BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).  So viewed, the evidence showed that on March 28, 2010, Officer B. Person of the Chesapeake Police Department stopped Sierra's car for a defective headlight.  Officer Person eventually arrested Sierra for DUI and searched him incident to the arrest.  Officer Person discovered eight prescription pills on Sierra's person, six in his pants pocket and two in his shirt pocket.  Officer Person concluded the pills were prescription pills based on the shapes of the pills and the numbers on them.[2]  Subsequent analysis showed that two of these pills contained methylphenidate, a Schedule II substance.[3]

Sierra testified that he had been performing at a bar earlier that evening[4] and that he had asked an individual for some Tylenol or aspirin because he had back pain.  Sierra claimed that he did not know the pills he received were Concerta,[5] but thought they were aspirin and Tylenol.

_____

[2] The admissibility of Officer Person's conclusion is not before us in this appeal.

[3] Code § 54.1-3447 specifies the characteristics of a Schedule II controlled substance:

> The Board shall place a substance in Schedule II if it finds that:
> 1. The substance has high potential for abuse;
> 2. The substance has currently accepted medical use in treatment in the United States, or currently accepted medical use with severe restrictions; and
> 3. The abuse of the substance may lead to severe psychic or physical dependence.

The other six pills found on Sierra's person were noted in the certificate of analysis as being consistent, upon visual examination, with other lower-Schedule controlled substances.

[4] Apparently, Sierra was a drummer in a band.

[5] Concerta is one of the brand names of methylphenidate.  Methylphenidate is prescribed as a treatment for attention deficit hyperactivity disorder and narcolepsy.  U.S. Nat'l Library of

According to Sierra, he simply "stuck them in [his] pocket" immediately before going on stage to perform.

The trial court opined that Sierra had not "given the most . . . credible evidence," stating that "under the facts it would be obvious that [the pills] were some sort of prescription and not aspirin, Tylenol, Advil." Accordingly, the trial court expressly found that Sierra's explanation was not credible and that Sierra knew he was in possession of a controlled substance.[6] The trial court found Sierra guilty of violating Code § 18.2-250, and Sierra now appeals this conviction.

## II. ANALYSIS

Sierra argues that the evidence was insufficient to prove that he knew he possessed methylphenidate, or Concerta. This appeal presents two questions for our analysis: (1) whether Code § 18.2-250 requires a defendant to know the exact substance he is possessing, and (2) whether the evidence here was sufficient to satisfy the appropriate *mens rea* standard under Code § 18.2-250. As we explain below, we conclude that the plain language of Code § 18.2-250 requires a defendant to know that the substance he possesses is in fact a controlled substance, but that it does not require him to know precisely what controlled substance it is. Furthermore, we also conclude that the trial court did not err in finding that Sierra knew he was in possession of a controlled substance.

"When reviewing the sufficiency of the evidence to support the verdict in a bench trial, 'the trial court's judgment is entitled to the same weight as a jury verdict and will not be disturbed on appeal unless it is plainly wrong or without evidence to support it.'" Burrell v.

---

Med., Methylphenidate, MedlinePlus (last updated Feb. 9, 2012), http://www.nlm.nih.gov/ medlineplus/druginfo/meds/a682188.html.

[6] Any drug required by federal law to be dispensed only by a valid prescription is considered a controlled substance. See Code § 54.1-3455 (setting forth the standards for classifying a drug as a Schedule VI controlled substance, the lowest level of controlled substance).

Commonwealth, 58 Va. App. 417, 433, 710 S.E.2d 509, 517 (2011) (quoting Hickson v.

Commonwealth, 258 Va. 383, 387, 520 S.E.2d 643, 645 (1999)); see also Code § 8.01-680.  It is

the prerogative of the trier of fact "'to resolve conflicts in the testimony, to weigh the evidence,

and to draw reasonable inferences from basic facts to ultimate facts.'"  Brown v.

Commonwealth, 56 Va. App. 178, 185, 692 S.E.2d 271, 274 (2010) (quoting Jackson v. Virginia,

443 U.S. 307, 319 (1979)).  Accordingly, an appellate court simply considers whether "*any*

rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt."  Jackson, 443 U.S. at 319 (emphasis in original).  While we review a trial court's

findings of fact "with the highest degree of appellate deference," Thomas v. Commonwealth, 48

Va. App. 605, 608, 633 S.E.2d 229, 231 (2006), "we review the trial court's statutory

interpretations and legal conclusions *de novo*," Sink v. Commonwealth, 28 Va. App. 655, 658,

507 S.E.2d 670, 671 (1998).

As we interpret the *mens rea* requirement of Code § 18.2-250, we are mindful that

"'[c]ourts apply the plain language of a statute unless the terms are ambiguous.'"  Lynchburg

Div. of Soc. Servs. v. Cook, 276 Va. 465, 480, 666 S.E.2d 361, 368 (2008) (quoting Boynton v.

Kilgore, 271 Va. 220, 227, 623 S.E.2d 922, 926 (2006)).  Indeed,

> "we must give effect to the legislature's intention as expressed by
> the language used unless a literal interpretation of the language
> would result in a manifest absurdity.  If a statute is subject to more
> than one interpretation, we must apply the interpretation that will
> carry out the legislative intent behind the statute."

Scott v. Commonwealth, 58 Va. App. 35, 48, 707 S.E.2d 17, 24 (2011) (quoting Evans v. Evans,

280 Va. 76, 82, 695 S.E.2d 173, 176 (2010)).  This is because "'[t]he primary objective of

statutory construction is to ascertain and give effect to legislative intent.'"  Commonwealth v.

Amerson, 281 Va. 414, 418, 706 S.E.2d 879, 882 (2011) (quoting Conger v. Barrett, 280 Va.

627, 630, 702 S.E.2d 117, 118 (2010)); see also B.P. v. Commonwealth, 38 Va. App. 735, 739,

568 S.E.2d 412, 413 (2002) ("We will not place a construction upon a statute which leads to an absurd result or one plainly contrary to the expressed intent of the General Assembly . . . .").

Code § 18.2-250 provides, in relevant part:

> A. It is unlawful for any person *knowingly or intentionally to possess a controlled substance* unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by the Drug Control Act (§ 54.1-3400 et seq.).
>
>    \*      \*      \*      \*      \*      \*      \*
>
> (a) Any person who violates this section with respect to any controlled substance classified in Schedule I or II of the Drug Control Act shall be guilty of a Class 5 felony.
> (b) Any person other than an inmate of a penal institution as defined in § 53.1-1 or in the custody of an employee thereof, who violates this section with respect to a controlled substance classified in Schedule III shall be guilty of a Class 1 misdemeanor.
> (b1) Violation of this section with respect to a controlled substance classified in Schedule IV shall be punishable as a Class 2 misdemeanor.
> (b2) Violation of this section with respect to a controlled substance classified in Schedule V shall be punishable as a Class 3 misdemeanor.
> (c) Violation of this section with respect to a controlled substance classified in Schedule VI shall be punishable as a Class 4 misdemeanor.

(Emphasis added.)

The plain language of subsection (A) of this statute requires that an offender "knowingly or intentionally possess *a controlled substance*." (Emphasis added.) The only differentiation in the statute between various types of controlled substances appears in later subparts, which prescribe different classifications of the level of offense based on the type of controlled substance a defendant actually possesses. Nowhere, however, in subparts (a)–(c) did the General Assembly insert a *mens rea* requirement. Rather, the General Assembly chose to specify a requisite degree of *mens rea* only in the general proscription against possessing controlled

- 5 -

substances in the first paragraph of subsection (A). Thus, the plain language of Code § 18.2-250 indicates the legislature's intent to criminalize the knowing and intentional possession of "a controlled substance," whatever that controlled substance may turn out to be. Based on what type of controlled substance is actually found in a defendant's possession, the legislature has demonstrated its intent to impose different levels of punishment for the possession of different types of controlled substances. The specific type of substance found in a defendant's possession is an *actus reus* element the Commonwealth must prove pursuant to subparts (a)–(c) of Code § 18.2-250(A), but it is not an element to which the *mens rea* requirement found earlier in Code § 18.2-250(A) applies.

To read the statute otherwise would be to insert additional words and requirements into the statutory text where they do not appear. However, "appellate courts 'must . . . assume . . . the legislature chose, with care, the words it used when it enacted the relevant statute.'" Nicholson v. Commonwealth, 56 Va. App. 491, 503, 694 S.E.2d 788, 794 (2010) (omissions in original) (quoting Barr v. Town & Country Properties, Inc., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990)). Thus, if the legislative intent is apparent from the plain language of the statute, "it is not permissible to add to or subtract from the words used in the statute." Posey v. Commonwealth, 123 Va. 551, 553, 96 S.E. 771, 771 (1918). "'Courts are not permitted to rewrite statutes. This is a legislative function.'" Barr, 240 Va. at 295, 396 S.E.2d at 674 (quoting Anderson v. Commonwealth, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944)). Accordingly, we decline to arbitrarily add specific *mens rea* requirements to elements of an offense where the General Assembly has expressly prescribed what *mens rea* requirements it wishes to impose.

This plain reading of the language of Code § 18.2-250 on its face certainly does not lead to an absurd result. On the contrary, the policy behind such a statutory scheme is clear: the General Assembly has chosen not to excuse a defendant who knows he is possessing a controlled

substance, but is unaware or perhaps mistaken as to the precise identity of the specific substance he is possessing (e.g., a defendant who thinks he is possessing heroin, when he is actually possessing cocaine). A defendant who intentionally possesses a controlled substance, aware of its nature and character as such, bears the risk of incurring whatever punishment the General Assembly has prescribed for the possession of the specific substance he has. This is the policy the legislature has embraced, and we will not substitute our own policy for that of the legislature. See Uniwest Constr., Inc. v. Amtech Elevator Servs., Inc., 280 Va. 428, 440, 699 S.E.2d 223, 229 (2010) ("The public policy of the Commonwealth is determined by the General Assembly, for 'it is the responsibility of the legislature, not the judiciary, . . . to strike the appropriate balance between competing interests . . . . Once the legislature has acted, the role of the judiciary is the narrow one of determining what [it] meant by the words it used in the statute.'" (alteration and omissions in original) (quoting Dionne v. Se. Foam Converting & Packaging, Inc., 240 Va. 297, 304, 397 S.E.2d 110, 114 (1990))).

Indeed, more than one federal circuit court has interpreted a similar federal statute in the same manner. 21 U.S.C. § 841(a) provides that "it shall be unlawful for any person knowingly or intentionally—(1) to . . . possess with intent to manufacture, distribute, or dispense, a controlled substance." Subsection (b) of this statute then sets forth different penalties for violations of subsection (a) with respect to different types and amounts of controlled substances. Thus, this federal statute contains a similar structure to Code § 18.2-250 for purposes of analyzing the particular *mens rea* requirement of these two statutes that is pertinent to our discussion.[7]

---

[7] Of course, 21 U.S.C. § 841 is the federal statute proscribing possession of a controlled substance with intent to manufacture, distribute, or dispense, while § 844 is the statute proscribing simple possession of a controlled substance. See 21 U.S.C. § 844(a) ("It shall be unlawful for any person *knowingly or intentionally to possess a controlled substance* unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner,

Significantly, federal circuit courts have interpreted this statute to provide that "a defendant who is in actual possession of a particular controlled substance, while intending to distribute another, may be punished for the drug with which he is found to be in possession." United States v. Barbosa, 271 F.3d 438, 459 (3d Cir. 2001); see also United States v. Valencia-Gonzales, 172 F.3d 344, 345 (5th Cir. 1999) (rejecting defendant's challenge to his sentence for possessing heroin even though the government stipulated defendant believed he was possessing cocaine instead); United States v. Strange, 102 F.3d 356, 359, 361 (8th Cir. 1996) (noting that defendants acted "with the requisite criminal intent and with every expectation of receiving some type of illegal drug to distribute," regardless of whether defendants knew a package contained cocaine instead of marijuana). Indeed, "it is well-settled that to sustain a conviction for possession with intent to distribute a controlled substance, it need not be proved that the defendant had knowledge of the particular drug involved, as long as he knew he was dealing with a controlled substance." United States v. Gomez, 905 F.2d 1513, 1514 (11th Cir. 1990) (defendant mistakenly believed he was possessing marijuana instead of cocaine); see also United States v. Collado-Gomez, 834 F.2d 280, 280 (2d Cir. 1987) (per curiam) (noting that although 21 U.S.C. § 841(a) "require[s] the government to prove that a defendant knowingly and intentionally possessed a controlled substance," the government need not prove that the defendant knew exactly what the controlled substance was); cf. United States v. Salazar, 5 F.3d 445, 446 (9th Cir. 1993) (noting in the context of importation of a controlled substance that "[t]he base offense level for guideline sentencing may be determined by the volume of the drug actually imported, whether or not the defendant knows either the volume or the nature of the

_____

while acting in the course of his professional practice, or except as otherwise authorized by this title or title III. . . ." (emphasis added)). However, the federal appellate courts have been more direct in addressing the specific *mens rea* issue before us today in cases arising under § 841 than they have in cases arising under § 844. This is of no significant consequence, since the language and structure of 21 U.S.C. § 841 is essentially identical to that of Code § 18.2-250 for purposes of examining the pertinent *mens rea* requirement of these sections.

substance—if he knows only that he is importing a controlled substance"); United States v. Obi, 947 F.2d 1031, 1032 (2d Cir. 1991) (per curiam) (noting that "the *mens rea* requirement concerning the possession of a controlled substance satisfies due process concerns and that Congress, for purposes of deterrence, intended that narcotics violators run the risk of sentencing enhancements concerning other circumstances surrounding the crime").

As the Third Circuit explained:

> The drug statutes require specific knowledge or intent as to a general category of unlawful items. The specific unlawful items, however, are found in the penalty section of the scheme. Thus, the structure and plain text of § 841 affords no support for a requirement that the Government must prove more than the defendant's knowledge that he was trafficking in a controlled substance.

Barbosa, 271 F.3d at 458.

This same reasoning applies with equal force to Code § 18.2-250. In the words of the Third Circuit, "to construe the statute otherwise would entail making drastic revisions to a statutory scheme, which, in the first instance, lies in the hands of Congress." Id. Accordingly, a defendant's "awareness that he was trafficking in what he believed was a controlled substance, albeit a different type for which he was arrested, is all that is required to satisfy the mens rea portion of the substantive offense." Id. As the Eighth Circuit succinctly summarized, a defendant "[does] not need to know the exact nature of the substance in his possession, only that it was a controlled substance of some kind." United States v. Martin, 274 F.3d 1208, 1210 (8th Cir. 2001).

Sierra contends that Young v. Commonwealth, 275 Va. 587, 659 S.E.2d 308 (2008), supports his position. In Young, the Supreme Court reiterated the general principle that to prove knowing and intentional possession of a controlled substance, "'[t]he Commonwealth must . . . establish that the defendant intentionally and consciously possessed it *with knowledge of its*

- 9 -

*nature and character.*'" 275 Va. at 591, 659 S.E.2d at 310 (emphasis in original) (quoting

Burton v. Commonwealth, 215 Va. 711, 713, 213 S.E.2d 757, 759 (1975)).  By itself, this

language does not indicate whether a defendant must know precisely what substance he is

possessing, or whether he must simply know the substance's nature and character as a controlled

substance.  Thus, this language does not solve the question before us.[8]

The Supreme Court in Young specifically rejected this Court's holding in that case "that

possession of a controlled drug gives rise to an inference that the defendant was aware of its

character."  Id. at 590, 659 S.E.2d at 310.  This Court, in affirming Young's conviction, had

"relied on its decision in Josephs v. Commonwealth, 10 Va. App. 87, 390 S.E.2d 491 (1990) [(en

banc)], in which [it] held that '[p]ossession of a controlled drug gives rise to an inference of the

defendant's knowledge of its character.'"  Id. at 591, 659 S.E.2d at 310 (third alteration in

original) (citation omitted) (quoting Josephs, 10 Va. App. at 101, 390 S.E.2d at 498-99).  The

---

[8] Sierra cites other similar language that has also been used in stating this basic principle, such as the following:  "In order to convict a defendant of 'possession' of a narcotic drug, . . . it generally is necessary to show that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it."  Ritter v. Commonwealth, 210 Va. 732, 741, 173 S.E.2d 799, 805 (1970); see also Gillis v. Commonwealth, 215 Va. 298, 301, 208 S.E.2d 768, 771 (1974).  Like the language in Young, however, this language is not dispositive of the specific question before us.  It is not immediately apparent whether "aware[ness] of the presence and character of the particular substance" simply means knowledge that a particular substance is both present and is a controlled substance, or whether it also means knowledge of exactly what the substance is.

Significantly, this language was taken from an A.L.R. article, cited in Ritter, which addressed older statutory language containing no express *mens rea* requirement.  See B. Finberg, Annotation, What Constitutes "Possession" of a Narcotic Drug Proscribed by § 2 of the Uniform Narcotic Drug Act, 91 A.L.R.2d 810, §§ 2, 5(a) (1965).  Furthermore, the article simply contrasted cases requiring a defendant to know "of the character of a substance in his possession *as a narcotic*," id. § 5(a) (emphasis added), with cases holding "that the defendant's knowledge was of no consequence, and that [mere] possession, actual or constructive, constitutes the crime defined by the statute," id. § 5(c).  Thus, the Supreme Court's adoption of the language contained in this article does not indicate that it intended to imply that a defendant must know precisely what controlled substance he is possessing.  Rather, it seems to indicate simply that a defendant must know of the character of a particular substance in his possession as being some type of controlled substance.  As we have explained, this *mens rea* requirement has now been expressed clearly by the plain language of Code § 18.2-250.

Supreme Court disagreed with and overruled this holding, "insofar as [it could] be read to imply that bare possession, without more, may furnish proof, beyond a reasonable doubt, of the essential element of guilty knowledge." Id. at 592, 659 S.E.2d at 310. Because "the contents of the pill bottle in [Young] gave no indication of their character,"[9] the Supreme Court held that the evidence was insufficient to support Young's conviction under Code § 18.2-250. Id. at 592, 659 S.E.2d at 311.

This case presents a different question from that presented in Young. The Supreme Court in Young was not faced with the question of whether Code § 18.2-250 requires a defendant to know simply that he is in possession of a controlled substance, or whether it exempts from its proscriptions a defendant who knows he is possessing a controlled substance, yet who fails to correctly ascertain exactly what substance he has. Today, we are faced with this specific question. Based upon the plain language of Code § 18.2-250, and in light of both the policy determinations the General Assembly has made and the well-established interpretation of similar statutory language in the federal circuit courts, we hold that a defendant need know only that he is possessing a controlled substance to be guilty of violating Code § 18.2-250. A claim by a defendant that he knew he was possessing a controlled substance, but was unaware or mistaken as to the precise identity of that substance, is not a defense under Code § 18.2-250.[10] Had the General Assembly wished to make this a valid defense, it could easily have crafted the language in the statute to express such an intent.

---

[9] In contrast to the situation in Young, Officer Person testified that the appearance of the pills in this case indicated their nature and character as prescription pills.

[10] Sierra here claims that he did not know any of the pills were controlled substances. However, as we discuss below, the trial court expressly found otherwise, and we cannot say that such finding was error.

Having explained the *mens rea* requirement of Code § 18.2-250, we now proceed to analyze whether the evidence in this case was sufficient to satisfy this requirement. We conclude that it was.

Sierra was in possession of eight prescription pills, six contained in his pants pocket and two separated into his shirt pocket. Officer Person testified that he concluded the pills were prescription pills based on the shapes of the pills and the numbers on them. Although Sierra testified that he thought the pills were aspirin and Tylenol, the trial court did not believe his testimony, stating that "under the facts it would be obvious that they were some sort of prescription and not aspirin, Tylenol, Advil." Accordingly, the trial court found that Sierra knew he was in possession of a controlled substance. We cannot say that the trial court's conclusion in this regard was "'plainly wrong or without evidence to support it.'" Burrell, 58 Va. App. at 433, 710 S.E.2d at 517 (quoting Hickson, 258 Va. at 387, 520 S.E.2d at 645); see also Code § 8.01-680. Furthermore, the trial court was fully within its discretion when it found Sierra's testimony not credible, and thus it "was at liberty to discount [Sierra's] self-serving statements as little more than lying to 'conceal his guilt,' and could treat such prevarications as 'affirmative evidence of guilt.'" Armstead v. Commonwealth, 56 Va. App. 569, 581, 695 S.E.2d 561, 567 (2010) (quoting Coleman v. Commonwealth, 52 Va. App. 19, 25, 660 S.E.2d 687, 690 (2008)). Therefore, we hold that the trial court did not err in finding the evidence sufficient to convict Sierra of knowingly and intentionally possessing a controlled substance in violation of Code § 18.2-250.

III.  CONCLUSION

For the foregoing reasons, we affirm Sierra's conviction.

Affirmed.