COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judge O'Brien and Senior Judge Haley
Argued at Norfolk, Virginia

UNPUBLISHED

MICHAEL WILLIS JOHNSON

v.     Record No. 1573-14-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE MARY GRACE O'BRIEN
JANUARY 12, 2016

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
John W. Brown, Judge

Dalton L. Glass, Assistant Public Defender (Rachel E. Wentworth,
Assistant Public Defender, on brief), for appellant.

Susan Baumgartner, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Following a bench trial on April 20, 2014, the Chesapeake Circuit Court found Michael

Willis Johnson ("appellant") guilty of two felonies: possession of a Schedule I or II controlled

substance (oxycodone), in violation of Code § 18.2-250, and possession with the intent to

distribute a Schedule I or II controlled substance (cocaine), in violation of Code § 18.2-248. The

court also found appellant guilty of the misdemeanor charges of possession of marijuana, in

violation of Code § 18.2-250.1; possession of Tylenol with codeine, in violation of Code

§ 18.2-250; and driving with a suspended or revoked operator's license, in violation of County

Ordinance 74-73 (74-4). The court sentenced appellant to serve nine years and 180 days

incarceration in the state penitentiary with eight years and ninety days suspended. This appeal

follows.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Appellant asserts three assignments of error:

I.   The trial court erred in overruling appellant's motion to suppress statements made after he invoked his Fifth Amendment right to remain silent.

II.  The trial court erred in finding appellant guilty of possession of Oxycodone, where there was insufficient evidence to show that appellant was aware of the nature and presence of the substance.

III. The trial court erred in finding Johnson guilty of possession with intent to distribute where there was insufficient evidence to corroborate appellant's statements.

## I. BACKGROUND

On September 16, 2013, Officer Juan Wood stopped a Ford van because it had a defective brake light. Appellant, the driver, was alone in the vehicle. When appellant rolled down his window, Officer Wood immediately smelled a strong odor of burned marijuana. Appellant told the officer that he had "just finished smoking it." He gave the officer a Georgia driver's license and acknowledged that he knew his operator's license was suspended.

Officer Wood searched appellant and found a partially-smoked marijuana blunt in one pocket of his pants and a plastic bag with suspected powder cocaine in another pocket. At that point, he handcuffed appellant, put him in the police vehicle, and searched the van. The officer found a grinder and a small digital scale in an open, "cubby"-like area underneath the radio. He also found several baggies that held suspected contraband. Two baggies contained small pills, later determined to be oxycodone with acetaminophen, codeine with acetaminophen, and Tylenol 3. Another baggie contained 1.516 grams of cocaine.

Officer Wood returned to his patrol car and read appellant his Miranda rights. The officer told appellant what he found in the van and began to ask him about the drugs. The officer was wearing a body camera, which recorded the encounter.

- 2 -

Approximately four and a half minutes into the conversation, Officer Wood offered to contact a narcotics detective to speak to appellant about the possibility of appellant being used as a confidential informant. According to the Commonwealth's transcript of the video, appellant responded by saying, "Like I said, I just got to take, I got to take everything." The officer then asked, "So you're not going to talk to nobody? You don't want to talk to the detective? I'm asking?" Appellant said, "I don't know what you mean by [unintelligible]" and did not answer the officer's question. The officer testified that when he asked appellant whether he wished to be interviewed by a narcotics detective, appellant said "No, I don't want to talk to anybody."[1] Officer Wood testified that he told appellant, "[T]hat's your right. You don't have to, but if you do change your mind, let me know, and I can call them and have them either meet you here or meet you at the jail."

Officer Wood stepped away and began to talk to another officer. Appellant called to him and asked, "Can you tell me what the baggie was? I don't even know what that was. I'm just curious." Officer Wood turned back to appellant and showed him the drugs that the officer found in the van. Appellant identified the pills as Percocet and Tylenol 3, but denied knowing what the cocaine was. He continued to talk to Officer Wood on the way to the jail, and ultimately admitted that he was going to sell the cocaine at work. Officer Wood testified that appellant never requested counsel and never asserted his right to remain silent.

Appellant moved to suppress all of the statements that he made after he "indicated that he wished to stop talking with Officer Wood." After hearing evidence and reviewing the video from Officer Wood's body camera, the court found that appellant never made an unambiguous assertion or invocation of his right to remain silent. The court held that appellant's statement

---

[1] During the suppression hearing, Officer Wood alternately characterized appellant's response to his offer as "I don't want to talk to anybody," and "I don't want to talk to them about it." The exact words were not intelligible on the video.

only referred to not wanting to talk to a narcotics detective about becoming a confidential informant. The court noted that "after declining the narcotics interview, the defendant [was] consistently pleading his case." Accordingly, the court denied the motion to suppress.

## II. ANALYSIS

### A. Denial of Suppression Motion

#### 1. Standard of Review

In reviewing a trial court's ruling on a motion to suppress, this Court views the evidence "in the 'light most favorable to . . . the prevailing party below,' . . . and the decision of the trial judge will be disturbed only if plainly wrong." Greene v. Commonwealth, 17 Va. App. 606, 608, 440 S.E.2d 138, 139 (1994) (quoting Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991)). The defendant has the burden to show that the trial court's denial of his suppression motion was reversible error. Jones v. Commonwealth, 277 Va. 171, 177-78, 670 S.E.2d 727, 731 (2009).

"The issue whether a suspect invoked his right to counsel presents a mixed question of law and fact." Commonwealth v. Hilliard, 270 Va. 42, 49, 613 S.E.2d 579, 584 (2005). The trial court's findings of fact are only reviewed for "clear error," and deference is given to the trial court's inferences that were drawn from the factual findings. Id. at 49-50, 613 S.E.2d at 584. However, in the absence of a factual dispute, the issue of whether a defendant's invocation of his right to remain silent "was sufficiently unambiguous under the circumstances to preclude further questioning by the law enforcement officers" is reviewed *de novo*. Stevens v. Commonwealth, 283 Va. 296, 302, 720 S.E.2d 80, 82 (2012). Because there is no substantive factual dispute as to the conversation between appellant and Officer Wood, we review the trial court's findings *de novo*.

2. The Trial Court Correctly Denied the Suppression Motion

In Miranda v. Arizona, 384 U.S. 436 (1966), the United States Supreme Court held that if a suspect "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." Id. at 473-74. However, to invoke the right to remain silent, a defendant must clearly and unambiguously communicate that he wishes to stop the interrogation and remain silent. Midkiff v. Commonwealth, 250 Va. 262, 266, 462 S.E.2d 112, 115 (1995). "Miranda should not be read so strictly as to require the police to accept as conclusive any statement, no matter how ambiguous, as a sign that the suspect desires to cut off questioning." Lamb v. Commonwealth, 217 Va. 307, 312, 227 S.E.2d 737, 741 (1976). A suspect must indicate his desire to remain silent "sufficiently clearly that a reasonable police officer in the circumstances would understand the statement" to be an invocation of his Fifth Amendment rights. Davis v. United States, 512 U.S. 452, 459 (1994).

When determining whether a defendant made an unambiguous assertion of his Fifth Amendment rights, a court is not limited to a single statement or considering only the words spoken. Stevens, 283 Va. at 303-04, 720 S.E.2d at 83-84. The circumstances preceding the request are also relevant. Id.; see also Hilliard, 270 Va. at 50, 613 S.E.2d at 584 ("Therefore, appellate consideration of the circuit court's denial of [appellant's] motion to suppress is restricted to a *de novo* review of the legal issue whether [appellant's] words, *taken in context*, were sufficient to invoke his right to counsel." (emphasis added)).

In the present case, the context in which the statements were made supports the trial court's denial of appellant's motion to suppress. Officer Wood was providing appellant the opportunity to talk with a narcotics officer. Appellant's assertion that he did not want to talk must be considered in the framework of that conversation. As the trial court found, appellant was only stating that he did not want Officer Wood to call the narcotics detective. He was not

unambiguously asserting his right to remain silent. In fact, appellant indicated that he wanted to keep talking to Officer Wood; appellant called him back to the car, asked him what was in the baggie, and continued to speak with Officer Wood as the officer drove him to the jail. When appellant said, "I don't want to talk to anybody," he was merely declining the offer to talk to a narcotics detective. See Mitchell v. Commonwealth, 30 Va. App. 520, 527, 518 S.E.2d 330, 333 (1999) (holding that when a defendant told police "I ain't got shit to say to y'all" then proceeded to volunteer information, the statement did not constitute a clear and unambiguous invocation of the Fifth Amendment right to remain silent).

Accordingly, appellant did not indicate his desire to remain silent "sufficiently clearly that a reasonable police officer in the circumstances would understand the statement" to be an invocation of Miranda. Davis, 512 U.S. at 459. We do not find that the court erred when it determined that appellant did not unambiguously assert his right to remain silent and therefore denied appellant's motion to suppress his statements.

### B. Assignments of Error II and III: Sufficiency of the Evidence

#### 1. Standard of Review

Appellant argues that the trial court erred in finding him guilty of possession of oxycodone because the evidence was insufficient to establish that he knew the nature of the substance he possessed. He also asserts that the evidence was insufficient to establish that he intended to distribute the cocaine found on his person and in the vehicle. "When reviewing the sufficiency of the evidence to support a conviction, the Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it." Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008). On appeal, "the evidence and all reasonable inferences flowing therefrom must be viewed in the light most favorable to the prevailing party in the trial court." Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).

An appellate court merely determines if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

## 2. Evidence Sufficient to Prove Possession of Oxycodone

To prove possession of a controlled substance, the Commonwealth must establish that the defendant's possession of the drug was knowing and intentional. Young v. Commonwealth, 275 Va. 587, 591, 659 S.E.2d 308, 310 (2008). While a defendant must be aware that the item he possesses is in fact a controlled substance, "the plain language of Code § 18.2-250 . . . does not require him to know precisely what controlled substance it is." Sierra v. Commonwealth, 59 Va. App. 770, 775, 722 S.E.2d 656, 658 (2012).

In Sierra, the defendant was searched incident to an arrest for driving while intoxicated. Id. at 774, 722 S.E.2d at 658. Eight prescription pills were found in his pants and shirt pockets. Id. A chemical analysis revealed that two of the pills contained a Schedule II controlled substance. Id. The defendant testified that earlier that evening he asked someone at a bar for Tylenol or aspirin because of back pain. Id. He stated that he "thought [the pills] were aspirin and Tylenol" and put them in his pocket. Id. at 775, 722 S.E.2d at 658. The trial court did not find the defendant's testimony credible and ruled that "it was obvious that [the pills] were some sort of prescription." Id. at 784, 722 S.E.2d at 663.

On appeal, we held that it was immaterial that the defendant did not know the exact nature of the controlled substance in his possession. Id. "[T]he General Assembly has chosen not to excuse a defendant who knows he is possessing a controlled substance, but is unaware or perhaps mistaken as to the precise identity of the specific substance he is possessing (e.g., a defendant who thinks he is possessing heroin, when he is actually possessing cocaine)." Id. at 779, 722 S.E.2d at 660.

In the case before us, appellant argues that because he identified the pills in his possession as "Percocet," he cannot be convicted of possessing oxycodone. This argument is without merit. When appellant identified the pills by their brand name, Percocet, he demonstrated that he knew the nature and character of the substance. Percocet is a brand name for oxycodone; oxycodone is the narcotic agent contained in the pill. Appellant identified the pills by name in his conversation with the officer—"The pills, they are mine, the Percocet, the Tylenol 3." See Turner v. Commonwealth, 14 Va. App. 737, 739, 420 S.E.2d 235, 236 (1992) ("[O]xycodone, also known as Percocet, [is] a Schedule II controlled substance."). The Commonwealth was not required to establish that appellant could specifically identify oxycodone as the narcotic contained in Percocet; therefore, the evidence was sufficient to establish that he knowingly possessed the drug. Accordingly, the trial court's finding was not "plainly wrong or without evidence to support it." Bolden, 275 Va. at 148, 654 S.E.2d at 586.

### 3. Evidence Sufficient to Prove Intent to Distribute

Appellant argues that the evidence was insufficient to prove intent to distribute because there was insufficient evidence to corroborate appellant's statements. While corroboration of a confession is required to support a conviction, the corroboration need only be "slight," and need not be "of all the contents of the confession, or even all the elements of the crime." Allen v. Commonwealth, 287 Va. 68, 74, 752 S.E.2d 856, 860 (2014) (quoting Watkins v. Commonwealth, 238 Va. 341, 348, 385 S.E.2d 50, 54 (1989)).

Appellant confessed to the officer that his plan was to sell the cocaine to his co-workers. He said he planned "to make some money out of it," and at trial he conceded that he told Officer Wood that he might "be exchanging or giving [the cocaine] away." Clearly, these statements establish his intent to dispense the controlled substance.

Additionally, appellant was in possession of a small digital scale, located in a "cubby" under the dashboard. There was no evidence that appellant had a pipe or other paraphernalia necessary to smoke crack cocaine. There was evidence, however, that he possessed other drugs in addition to the cocaine.

Determining appellant's intent is a factual question, solely within the purview of the factfinder. Ingram v. Commonwealth, 192 Va. 794, 801-02, 66 S.E.2d 846, 850 (1951). We cannot say that the factfinder in this case was plainly wrong; the record amply supports the court's conclusion that the evidence was sufficient.

## III. CONCLUSION

For the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.