COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Alston and Senior Judge Frank
Argued at Norfolk, Virginia

UNPUBLISHED

JAMES MELVIN HOWARD

                                          MEMORANDUM OPINION* BY
v.        Record No. 0780-17-1            JUDGE RANDOLPH A. BEALES
                                          JUNE 5, 2018
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
John W. Brown, Judge

Carmelou G. Aloupas (Aloupas Law, P.L.L.C., on briefs), for
appellant.

Victoria Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


The Circuit Court of the City of Chesapeake convicted James Melvin Howard ("appellant")

of one count of possessing a Schedule I narcotic and one count of possessing a Schedule II narcotic,

both violations of Code § 18.2-250. On appeal, appellant challenges the sufficiency of the evidence

supporting these convictions. Appellant argues that the Commonwealth failed to prove that he

knowingly and intentionally possessed two different controlled substances, heroin and fentanyl,

when both substances were contained within a single capsule that appeared visually uniform. As a

result, appellant argues that both of his convictions must be reversed.

I. BACKGROUND

During appellant's bench trial, Chesapeake Police Officers Matthew Elliot and Nicole

Kath testified that they were on duty on May 16, 2015 when they stopped appellant's vehicle for

running a stop sign. Officer Elliot testified that he approached appellant's vehicle from the rear,

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

and, upon reaching the vehicle, he smelled the odor of marijuana. Officer Elliot asked appellant, the vehicle's sole occupant, to step outside while Officer Kath searched appellant's vehicle for contraband. While Officer Kath searched appellant's vehicle, Officer Elliot and appellant waited by the officers' patrol vehicle, which was located approximately 15-20 feet behind appellant's vehicle. There, Officer Elliot smelled marijuana on appellant. Officer Kath testified that she joined Officer Elliot and appellant near the officers' patrol vehicle after she concluded her search of appellant's vehicle. Officer Kath stated that she also smelled marijuana on appellant, and she proceeded to search him as a result.

Officer Kath testified that, during her search of appellant, she "located in his cargo pocket [of his pants] a suspected capsule of heroin." Officer Kath stated that the capsule contained "a brownish, off-white powdery substance," which was later determined to be a mixture of heroin, a Schedule I narcotic, and fentanyl, a Schedule II narcotic. Officer Kath testified that the powder within the capsule was "all the same color" and that she "couldn't distinctively say that this half was white and this half was brown. It was just all a brownish capsule." Officer Kath then arrested appellant. The officers did not ask appellant any questions about the capsule or its contents, and appellant did not volunteer any statements.

Officer Kath also testified about appellant's conduct while she performed the search. She stated:

> [H]is head was turned down. He was watching everything I was doing on his right side. I found it [the capsule] in his right cargo pocket. He was looking down at it when I found it. He seemed completely surprised and put his head back up after I located it at the bottom of the cargo pocket, again, by itself.

Officer Kath further testified that she had previously instructed appellant to place his hands on top of his head and to interlock his fingers. Despite these instructions, appellant kept taking his hands off of his head and looking towards the pocket where Officer Kath found the heroin and

- 2 -

fentanyl capsule. Officer Kath testified, "I had to repeatedly tell him to keep his hands on top of his head."

At trial, the parties stipulated to the admissibility of the Commonwealth's certificate of analysis, which showed that the capsule contained heroin and fentanyl. In addition, the parties stipulated that "the lab analyst would indicate that, visually speaking, she could not tell the difference between fentanyl or heroin inside the cap[sule] as far as determining that there was one narcotic versus two inside the capsule until she tested it out." In stipulating that the two narcotics were visually uniform, the prosecutor stated, "I think Officer Kath's testimony even backed that up."

At the conclusion of the trial, the judge convicted appellant of two counts of possession. In making his finding, the judge considered that "[c]learly, here what's found in his [appellant's] own pocket is in his actual physical exclusive possession. The knowledge of where it was and whether he was asserting dominion and control over it is clearly established." Regarding appellant's knowledge of the substances inside the capsule, the trial judge found that "the possession of it in the pocket of a pair of pants that he was wearing at the time is certainly circumstantial evidence of knowledge, and that possession could certainly give an inference that he knew what it was." The trial judge also considered the evidence that appellant "kept looking down in his right pocket . . . and he kept taking his hands off his head during the times that he had been told not to." In concluding, the trial judge stated:

> So the Court finds that the defendant knowingly possessed a
> controlled substance which was originally, by visual examination
> by the police officer, consistent with their training and experience
> to be heroin. They did not know fentanyl was in there either, but
> the analysis shows that it was. The Court finds him guilty of both
> the possession of heroin and possession of fentanyl . . . .

This appeal followed. Appellant's single assignment of error to this Court alleges that the trial court erred "in Convicting Appellant of Two Counts of Possession of Schedule I/II Narcotics

(Heroin and Fentanyl), When Both Substances were Contained Within One Capsule, the Contents of the Capsule Were Visually Uniform, and No Evidence was Presented that Appellant Knew the Capsule Contained More Than One Substance."

## II. ANALYSIS

Appellant's assignment of error presents two questions for our analysis: (i) whether the *mens rea* requirement of Code § 18.2-250 requires a defendant to know the exact number of controlled substances that are in his possession, and (ii) whether the evidence in this case was sufficient to support multiple convictions under that statute.

### A. Standard of Review

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "We must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Kelly, 41 Va. App. at 257-58, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319).

Interpreting the *mens rea* requirement of Code § 18.2-250, however, is a pure question of law that we review *de novo*. See McGinnis v. Commonwealth, 68 Va. App. 262, 266, 808 S.E.2d 200, 202 (2017). When interpreting a statute's language:

> [W]e must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity. If a statute is subject to more

than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute.

Sierra v. Commonwealth, 59 Va. App. 770, 776, 722 S.E.2d 656, 659 (2012) (quoting Scott v. Commonwealth, 58 Va. App. 35, 48, 707 S.E.2d 17, 24 (2011)).

## B. Statutory Interpretation

Appellant's assignment of error challenges his conviction based upon his alleged lack of knowledge of the number of controlled substances that the capsule contained. The plain language of Code §18.2-250 states in relevant part:

> (A)  It is unlawful for any person knowingly or intentionally to possess *a* controlled substance . . . .
>
> . . . .
>
> (a)  Any person who violates this section with respect to *any* controlled substance classified in Schedule I or II of the Drug Control Act shall be guilty of a Class 5 felony . . . .

(Emphasis added).  Subsequent subparts establish a corresponding level of punishment for narcotics classified under Schedules III – VI.  See Code § 18.2-250(A)(b–c).  Therefore, based upon the plain language of Code § 18.2-250, a defendant can be convicted of multiple counts of possession under the statute if he knowingly and intentionally possesses more than one controlled substance.  Given the General Assembly's considerable efforts to combat the problem of illegal drugs, this was certainly the legislature's intent.  The General Assembly selected "*a*" controlled substance and "*any*" controlled substance as the statute's unit of prosecution.[1]  By

---

[1] In Johnson v. Commonwealth, 292 Va. 738, 793 S.E.2d 321 (2016), our Supreme Court affirmed this Court's unpublished opinion in Johnson v. Commonwealth, No. 1138-14-2, 2015 Va. App. LEXIS 211 (Va. Ct. App. July 7, 2015), which upheld the defendant's three convictions for felony failure to appear in violation of Code § 19.2-128(B).  In Johnson, the defendant faced felony charges of forgery, uttering, and attempting to obtain money by false pretenses.  Johnson, 292 Va. at 740, 793 S.E.2d at 322.  Because Johnson was absent from his preliminary hearing, he was subsequently indicted and convicted for three separate counts of failure to appear – one conviction for each underlying indictment – despite the fact that the

doing so, the legislature selected a term that would permit a defendant to be charged for *each* controlled substance he possesses. Notably, the General Assembly chose not to limit the number of charges or convictions that a defendant could receive if multiple controlled substances were packaged in a single container or a single capsule. If the legislature had intended to do so, then it would have drafted the statute with different language, for example, so that "one or more" controlled substances was the unit of prosecution – thereby permitting a single conviction to encompass multiple controlled substances. However, the General Assembly chose not to draft the statute in that way, and we must give effect to its apparent intent derived from the statute's plain language to punish defendants for each controlled substance that they possess. See Johnson v. Commonwealth, 292 Va. 738, 742, 793 S.E.2d 321, 323 (2016) ("We must presume that the General Assembly chose, with care, the words that appear in a statute, and must apply the statute in a manner faithful to that choice."). Therefore, the simple fact that, in the current case, two controlled substances were packaged in a single capsule does not change the General Assembly's intent to convict and punish separately for the possession of each controlled substance within that capsule.

---

defendant missed a single hearing. Id. In determining whether the General Assembly intended such an outcome, the Court stated:

> The plain language of Code § 19.2-128 indicates that the legislature intended to establish each felony charge as the unit of prosecution for a failure to appear. The legislature selected the term "a" felony, thereby indicating that each felony charge could serve as the predicate of a failure to appear conviction. Instead of using the singular "a" felony, the legislature could have stated, for example, that a defendant charged with "one or more felonies" who fails to appear is guilty of a Class 6 felony. It did not.

Id. at 741-42, 793 S.E.2d at 323. Similar to the Supreme Court's statutory interpretation in Johnson, the unit of prosecution for Code § 18.2-250 – "a controlled substance" and "any controlled substance" – indicates that a defendant can likewise receive multiple charges and convictions for possessing more than one controlled substance, even if those controlled substances are packaged in a single container or a single capsule.

Furthermore, appellant's assignment of error implicates Code § 18.2-250's general *mens rea* requirement that we analyzed in Sierra v. Commonwealth, 59 Va. App. 770, 722 S.E.2d 656 (2012). In Sierra, we considered "whether [the statute] requires a defendant to know the *exact substance* he is possessing . . . ." Id. at 775, 722 S.E.2d at 658 (emphasis added). As stated *supra*, appellant argues that the trial court erred by entering multiple convictions where the evidence failed to show that he was aware that there was more than one controlled substance inside the capsule. While we acknowledge there is some difference between appellant's argument and the issue we addressed in Sierra, we find that Sierra's reasoning is at least persuasive (albeit not completely on point) in resolving this case.

In Sierra, the defendant was in possession of eight pills, two of which contained methylphenidate (a controlled substance). Id. at 774, 722 S.E.2d at 658. Sierra testified that he received the pills from another individual when he was experiencing back pain. Id. "Sierra claimed that he did not know the pills he received were Concerta [a brand name for methylphenidate], but thought they were aspirin and Tylenol." Id. at 774-75, 722 S.E.2d at 658. However, contrary to his claimed ignorance, the trial court found that the evidence showed that Sierra was aware of the nature and character of those pills. Sierra kept the methylphenidate pills in a separate pocket from the other six pills. Id. at 784, 722 S.E.2d at 663. In addition, the methylphenidate pills were visually distinct from the others. Id. Based on this evidence, the trial court convicted Sierra of knowingly and intentionally possessing a controlled substance.

On appeal, Sierra challenged the sufficiency of the evidence showing that he knowingly and intentionally possessed methylphenidate. Id. at 775, 722 S.E.2d at 658. In affirming his conviction, we stated that "the plain language of Code § 18.2-250 requires a defendant to know that the substance he possesses *is in fact a controlled substance*, but that it does not require him to know precisely what controlled substance it is." Id. at 775, 722 S.E.2d at 658 (emphasis

added). Rather, the actual substance in a defendant's possession "is an *actus reus* element the Commonwealth must prove pursuant to [the statute], but it is not an element to which the *mens rea* requirement . . . applies." Id. at 778, 722 S.E.2d at 660. Therefore, while a defendant may be ignorant of the exact substance that he possesses, his ignorance is not a defense where he had the general *mens rea* to possess a controlled substance. Consequently, given our holding in Sierra and given the General Assembly's intent in enacting this statute to combat the scourge of drugs, it logically follows that a defendant who had the general *mens rea* to possess a controlled substance – but actually possessed *more than one* controlled substance in the same container – is likewise not entitled to a reversal of each conviction.

Appellant argues that we must reach the opposite conclusion in resolving this appeal. He argues that "[w]hen faced . . . with 1 capsule containing 2 substances, and the requirement that the Commonwealth establish that Appellant intentionally and consciously possessed [the capsule] '*with knowledge of its nature and character*,' . . . the holding of Sierra falls short."[2] (Emphasis in original). Appellant argues, "No Evidence was Presented that Appellant Knew the Capsule Contained *More Than One Substance*." (Emphasis added). To carry appellant's argument to its logical conclusion, because appellant did not intend to possess more than one

---

[2] While appellant does not actually make a double jeopardy argument in his brief, his argument is somewhat similar to a double jeopardy challenge. The Double Jeopardy Clause of the United States Constitution protects against "(1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) *multiple punishments for the same offense*." Payne v. Commonwealth, 257 Va. 216, 227, 509 S.E.2d 293, 300 (1999) (emphasis added). "In the single-trial setting, 'the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.'" Johnson, 292 Va. at 741, 793 S.E.2d at 322-23 (quoting Blythe v. Commonwealth, 222 Va. 722, 725, 284 S.E.2d 796, 798 (1981)). "When considering multiple punishments for a single transaction, the controlling factor is legislative intent." Id. at 741, 793 S.E.2d at 323 (quoting Kelsoe v. Commonwealth, 226 Va. 197, 199, 308 S.E.2d 104, 104 (1983)). As we noted *supra*, however, the clear intent of Code § 18.2-250, as enacted by the General Assembly, is to punish a defendant for *any* controlled substance that he possesses. Here, appellant possessed a Schedule I narcotic and a Schedule II narcotic – both of which warrant a separate conviction under the statute.

controlled substance (presumably the heroin), he lacked the general *mens rea* to be convicted of what the capsule actually contained, and, therefore, he argues, both of his convictions for each narcotic must be reversed and dismissed on appeal. Therefore, the more drugs the capsule contained that appellant has in his possession, the more this Court is required to reverse each of appellant's convictions, according to appellant's argument. It would be ironic indeed if the fact that he was in possession of two controlled substances, instead of one, enabled him to succeed in getting his convictions overturned.

In short, we are not persuaded by the logic of appellant's argument. Holding as appellant suggests, and reversing both of his convictions, would completely fly in the face of the intent of the General Assembly in enacting this legislation to fight the spread of illegal drugs in Virginia. See Sierra, 59 Va. App. at 776, 722 S.E.2d at 659 ("[W]e must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity." (quoting Scott, 58 Va. App. at 48, 707 S.E.2d at 24)). To interpret the statute as appellant argues would be to encourage drug dealers to mix various narcotics into one container in order to thwart prosecution under Code § 18.2-250 for more than one felony charge of possession of multiple narcotics in the same capsule, pill, or other container.

We decided Sierra in 2012, and since then, in 2014, the General Assembly amended Code § 18.2-250. See 2014 Va. Acts chs. 674, 719. In amending the statute, the General Assembly did nothing to overturn our holding in Sierra or our interpretation of Code § 18.2-250's *mens rea* component. Therefore, given that the General Assembly has been aware of this Court's interpretation of Code § 18.2-250 since 2012, it has clearly decided not to overturn our holding by amending the statute's general *mens rea* requirement. See Wright v. Commonwealth, 52 Va. App. 690, 727, 667 S.E.2d 787, 805 (2008) (*en banc*) ("The legislature is presumed to know the law when enacting legislation" or amending legislation). Therefore, in

line with our reasoning in Sierra, given that the evidence showed that appellant knowingly and intentionally possessed the capsule with the general *mens rea* that it contained at least one illegal controlled substance, appellant is criminally liable for whatever illegal controlled substances the capsule contained.

Here, "[v]iewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), we conclude that a rational factfinder could conclude that the evidence was sufficient to convict appellant of possession of heroin and possession of fentanyl – both of which were contained in the capsule.

The evidence was undisputed that appellant actually possessed the capsule that contained heroin and fentanyl. The capsule was in the pocket of appellant's pants. Officer Kath testified that, while she was searching appellant, he continually looked down towards the pocket where the capsule was found. See Young v. Commonwealth, 275 Va. 587, 591, 659 S.E.2d 308, 310 (2008) (stating that a defendant's guilty knowledge "may be shown by evidence of the acts, statements or conduct of the accused"). In addition, as Officer Kath searched this area, appellant continued to remove his hands from the top of his head despite the admonitions from the officers not to do so. These continued movements, while being searched by a law enforcement officer, required Officer Kath to repeatedly remind appellant to keep his hands on the top of his head. Even more probative was appellant's constant looking down toward the pocket where the capsule containing the heroin and fentanyl was found. It is well established that other "circumstantial evidence may also support a finding of a defendant's knowledge of the nature and character of the substance in his possession, such as the drug's distinctive odor or appearance, or statements or conduct of others in his presence that would tend to identify it." Id.

From this evidence, the trial judge, as a rational factfinder, could find that appellant knew that the capsule was located in his pocket and that he was aware of its illicit nature and character.

While no previous Virginia appellate cases have addressed the exact circumstances of this case, we believe that our holding is supported by persuasive precedent from the appellate courts of some of our sister states. See, e.g., State v. Woodard, No. CA2016-09-084, 2017 Ohio App. LEXIS 3052 (Ohio Ct. App. July 24, 2017); State v. Hall, 692 S.E.2d 446 (N.C. Ct. App. 2010). Both of these cases affirmed the appellants' multiple convictions for the possession of illegal controlled substances, where two controlled substances were packaged in a single baggie or pill.

In State v. Hall, the North Carolina Court of Appeals affirmed Hall's two convictions for "possession of 3-4 Methylenedioxymethamphetamine, a schedule I controlled substance that is also known as 'ecstasy,' and ketamine, a schedule III controlled substance."[3] Hall, 692 S.E.2d at 448. Police stopped Hall's vehicle, and when the officer conducting the stop detected the odor of marijuana, a drug-sniffing dog was used to confirm that probable cause existed to search the vehicle. Id. The officer then searched the vehicle for contraband and found "two green pills" that the officer believed to be ecstasy based upon his professional experience. Id. Hall denied ownership of the pills. Id. Subsequent analysis of the pills determined that each of the two pills contained both ecstasy and ketamine. Id.

On appeal, Hall conceded that there was "sufficient evidence to submit at least one charge to the jury." Id. at 449. However, she argued that "the trial court erred by entering sentences for both possession of ecstasy and possession of ketamine when both controlled

---

[3] The applicable North Carolina statute states, "Except as authorized by this Article, it is unlawful for any person . . . [t]o possess a controlled substance." N.C. Gen. Stat. § 90-95(a)(3). In Hall, the North Carolina Court of Appeals also stated, "Possession of a controlled substance has two essential elements: (1) the substance must be possessed, and (2) the substance must be *knowingly* possessed." 692 S.E.2d at 449 (emphasis added).

substances were contained in a single pill," thereby violating her rights under the Double Jeopardy Clause of the Fifth Amendment. Id. at 450. In resolving the case, the North Carolina Court of Appeals affirmed both of her convictions and stated that "[a]ny amount of ecstasy and any amount of ketamine found in Defendant's possession would have been sufficient to charge Defendant with possession of both controlled substances." Id. at 451. Despite Hall's arguments, the court found that the fact that both drugs were contained within a single pill did not prevent a conviction for possession of each illegal drug, although the court affirmed both convictions largely on a double jeopardy analysis.

More applicable to our case is the Ohio Court of Appeals decision in State v. Woodard. In that case, Woodard was indicted for felony possession of heroin and felony "aggravated possession of drugs," which charge related to his possession of fentanyl.[4] 2017 Ohio App. LEXIS 3052, at *1. Woodard, an inmate in an Ohio prison was observed by a guard as he made a hand-to-hand exchange with a fellow inmate. Id. at *2. In this exchange, Woodard passed the other inmate a "baggie of drugs." Id. at *1. That baggie contained both heroin and fentanyl. Id.

---

[4] The statute implicated in Woodard, Ohio Revised Code Section 2925.11(A), contains a general *mens rea* requirement similar to that in Virginia Code § 18.2-250. "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Ohio Rev. Code § 2925.11(A). Regarding the charges faced by Woodard, the court stated:

> Pursuant to R.C. 2925.11(C)(6), "[i]f the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of possession of heroin." Where the "drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, hashish, and controlled substance analogs, whoever violates division (A) of this section is guilty of aggravated possession of drugs." R.C. 2925.11(C)(1).

Woodard, 2017 Ohio App. LEXIS 3052, at *8-9.

at *2. When the officers attempted to recover the baggie of drugs from the inmate who received them, that individual attempted to swallow the baggie. Id. When confronted by the guards, appellant denied passing anything to the inmate besides "just a little weed." Id. at *3. On appeal, the Ohio Court of Appeals found that the evidence was sufficient to support both of appellant's convictions for possession of the heroin and possession of the fentanyl. Significantly, appellant's own statement that he passed "just a little weed," to the other inmate established his knowledge that the baggie contained at least one illegal drug. "Although appellant mischaracterized the controlled substance he handed over to [the other inmate], the fact remains appellant knowingly possessed controlled substances in violation of [the statute]." Id. at *11. Furthermore, the Ohio Court of Appeals likewise held in Woodard that the evidence was sufficient to affirm both of Woodard's convictions for possession of the heroin and possession of the fentanyl, despite his statement that he only possessed a single drug in the baggie.

Both the decision by the North Carolina Court of Appeals in Hall and the decision by the Ohio Court of Appeals in Woodard support the decision that we reach here, affirming two convictions for possession where both of the illegal controlled substances in appellant's possession were contained in the same capsule.

### III. CONCLUSION

In 2012, we addressed Code § 18.2-250's general *mens rea* requirement in Sierra, and we held that the Commonwealth was not required to prove that a defendant knew the *exact substance* he possessed to obtain a conviction. Rather, in terms of a defendant's *mens rea*, we held that the Commonwealth is only required to prove that the defendant knowingly and intentionally possessed a controlled substance. The General Assembly has amended the statute since our decision and made no changes to the statute that would overturn or otherwise change this Court's decision in Sierra. Here, given the General Assembly's intent in enacting the statute to combat the spread of illegal

- 13 -

drugs and given our decision in <u>Sierra</u> and the decisions of courts of appeals in our sister states in cases similar to ours (particularly the decision of the Ohio Court of Appeals in <u>State v. Woodard</u>), we conclude that the Commonwealth is not required to prove that a defendant knows each controlled substance that a capsule contains in order to support convictions for both controlled substances contained in the capsule under Code § 18.2-250 – as long as the defendant knows that the capsule contains at least one controlled substance.

The evidence here was sufficient, based upon appellant's furtive movements while being searched and his continuing to look towards the pocket where Officer Kath eventually found the capsule, for a rational factfinder to conclude appellant was aware of the capsule's presence and knew that it contained at least one controlled substance. Therefore, for all of these reasons, we affirm appellant's convictions both for possession of heroin and possession of fentanyl.

<u>Affirmed.</u>