**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1877**

HASSAN BAH,

       Petitioner,

    v.

WILLIAM P. BARR, Attorney General,

       Respondent.

**No. 18-2106**

HASSAN BAH,

       Petitioner,

    v.

WILLIAM P. BARR, Attorney General,

       Respondent.

On Petitions for Review of an Order of the Board of Immigration Appeals.

Argued: September 18, 2019            Decided: February 13, 2020

Before THACKER, RICHARDSON, and RUSHING, Circuit Judges.

No. 18-1877, petition dismissed; No. 18-2106, petition denied by published opinion. Judge Rushing wrote the majority opinion, in which Judge Richardson joined. Judge Thacker wrote a dissenting opinion.

———————————

**ARGUED:** Bryan James Harrison, BRYAN CAVE LEIGHTON & PAISNER LLP, Washington, D.C., for Petitioner. Christopher Alan Bates, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Rodney F. Page, Colin S. Harris, BRYAN CAVE LEIGHTON PAISNER LLP, Washington, D.C.; Claudia R. Cubas, CAPITAL AREA IMMIGRANTS' RIGHTS (CAIR) COALITION, Washington, D.C., for Petitioner. Joseph H. Hunt, Assistant Attorney General, Linda S. Wernery, Assistant Director, Walter Bocchini, Senior Litigation Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

———————————

RUSHING, Circuit Judge:

Federal immigration law makes aliens who have been convicted under "any law . . . of a State . . . relating to a controlled substance (as defined [by federal law])" removable— that is, subject to deportation. 8 U.S.C. § 1227(a)(2)(B)(i). The question in this case is whether Petitioner's conviction for possession of ethylone, a substance illegal under both Virginia and federal law, renders him removable even though Virginia's controlled substance statute is broader than its federal counterpart. We hold that it does and so deny his petition for review.

I.

Petitioner Hassan Bah is a native and citizen of Sierra Leone. He entered the United States as a child in 1999 on a temporary visitor visa. When the visa expired, Bah stayed in the United States. Overstaying his visa rendered Bah removable, but because he is now married to an American citizen, Bah could apply for an adjustment of status to prevent his deportation. Such an adjustment is unavailable, however, if Bah is also removable because he committed a qualifying controlled substance offense.

In December 2015, a Virginia grand jury indicted Bah for possession of "3,4-methylenedioxymethamphetamine (MDMA)," as well as possession of marijuana. Forensic testing later revealed that the substance believed to be MDMA was in fact "3,4-methylenedioxyethcathinone (ethylone)." Ethylone is a chemically similar variant of MDMA that is listed separately from MDMA on Schedule I of Virginia's controlled substance schedules. *See* Va. Code § 54.1-3446. It is undisputed that ethylone, a positional isomer of butylone, qualifies as a Schedule I controlled substance under federal law, as

3

does MDMA. *See* 21 C.F.R. § 1308.11(d)(62) (butylone); 21 C.F.R. § 1308.11(d)(11) (MDMA); *see also* Oral Arg. at 21:44–23:10, 33:10–33:43.

After the forensic testing, Bah's indictment was amended by striking the reference to MDMA and handwriting "3,4-methylenedioxyethcathinone (ethylone)" in its place. A.R. 261. The word in parentheses in the handwritten amendment is unclear and could be read as "ethylene." A bench trial was conducted in the Circuit Court of the City of Alexandria, Virginia. The court acquitted Bah of "Possession of Marijuna [*sic*]" but found him guilty of "Possession of Ethylene as charged in Count One of the indictment as amended." A.R. 264.[1]

The Department of Homeland Security (DHS) subsequently initiated removal proceedings against Bah. DHS alleged that Bah was removable both because he had overstayed his temporary visitor visa and because he had been convicted of felony possession of a controlled substance in violation of Virginia Code § 18.2-250(A)(a). Before the Immigration Judge, Bah conceded that he had overstayed his visa but contested the charge of removability predicated on his conviction for a controlled substance offense. The Immigration Judge deemed Bah removable but noted that she would reconsider her decision if Bah could show that the substance he had been convicted of possessing was not illegal under federal law.

---

[1] Ethylene is "a hydrocarbon gas." *U.S. Indus. Chems., Inc. v. Carbide & Carbon Chems. Corp.*, 315 U.S. 668, 670 (1942); *see also* "Ethylene," *Encyclopaedia Britannica*, https://www.britannica.com/science/ethylene (2020) ("Natural sources of ethylene include both natural gas and petroleum; it is also a naturally occurring hormone in plants . . . and in fruits . . . ."). It is not a controlled substance under either Virginia or federal law.

4

Bah moved for reconsideration, arguing that Virginia law prohibits possession of more substances than federal law and that Virginia law does not make the identity of the particular controlled substance—as opposed to the class of controlled substances—an element of the crime of unlawful possession. The Immigration Judge denied the motion. Bah pressed his argument before the Board of Immigration Appeals, which rejected it in a written decision. The Board ruled that Virginia Code § 18.2-250 is divisible as to the identity of the controlled substance and that the Immigration Judge's decision to examine the amended indictment to determine that Bah was convicted of possessing a controlled substance as defined by federal law was appropriate. *See* A.R. 3–7. Bah timely petitioned this Court for review.[2]

## II.

The Courts of Appeals "generally lack jurisdiction to review orders of removal when an alien is removable for a controlled substance conviction," *Jaquez v. Sessions*, 859 F.3d 258, 260 (4th Cir. 2017); *see* 8 U.S.C. § 1252(a)(2)(C), but we retain jurisdiction to review "constitutional claims or questions of law," 8 U.S.C. § 1252(a)(2)(D). This case raises a question of law: whether a conviction for possessing ethylone under Virginia Code § 18.2-250(A)(a) triggers removal under 8 U.S.C. § 1227(a)(2)(B). We review this question of law de novo. *Jaquez*, 859 F.3d at 261.

---

[2] Bah petitioned for review of the Board's original decision, *see* No. 18-1877, and filed a second petition for review of the Board's amended decision, *see* No. 18-2106. Because the Board's amended decision vacated its original decision, we dismiss Bah's petition in No. 18-1877.

A.

Section 1227(a)(2)(B)(i), a provision of the Immigration and Nationality Act, authorizes the removal of "[a]ny alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State . . . relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana." 8 U.S.C. § 1227(a)(2)(B)(i). Section 1227(a)(2)(B)(i) incorporates 21 U.S.C. § 802, which defines a "controlled substance" as "a drug or other substance, or immediate precursor," included on one of five federal schedules. 21 U.S.C. § 802(6).

To trigger immigration consequences, an alien's controlled substance conviction must involve a substance that is included on one of the federal schedules. *Mellouli v. Lynch*, 135 S. Ct. 1980, 1987, 1990–1991 (2015). When a State's schedule of controlled substances is coextensive with or narrower than the federal schedules, removability is clear. *See Martinez v. Sessions*, 893 F.3d 1067, 1070 (8th Cir. 2018). But when a State punishes possession of substances not proscribed by federal law, there is a possibility that the state conviction involves a substance not listed on the federal schedules, in which case the conviction would fall outside the purview of Section 1227(a)(2)(B)(i). *See*, *e.g.*, *Guillen v. United States Attorney General*, 910 F.3d 1174, 1180 (11th Cir. 2018).

"Because Congress predicated deportation on convictions, not conduct," we employ the categorical approach to assess whether a predicate controlled substance offense renders an alien removable. *Mellouli*, 135 S. Ct. at 1986 (internal quotation marks omitted). Under the categorical approach, we examine "the state statute defining the crime of conviction"

6

and compare it with the relevant federal law—here, the federal controlled substance schedules. *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013) (internal quotation marks omitted); *see also Mathis v. United States,* 136 S. Ct. 2243, 2248 (2016); *Taylor v. United States*, 495 U.S. 575, 599–600 (1990). If the state statute penalizes conduct not covered by its federal comparator, then the state statute is "overbroad" and, generally speaking, a conviction under that statute cannot be a predicate for immigration consequences. *See Descamps v. United States*, 570 U.S. 254, 261 (2013).

But finding a state statute overbroad is not always the end of the inquiry. Some overbroad statutes are "divisible"—they set forth multiple crimes, with varying elements— and some of the crimes set forth therein would pass the categorical inquiry if examined on their own. *Mathis*, 136 S. Ct. at 2249. Courts examining a divisible statute employ the "modified categorical approach," which entails an examination of a "limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.*; *see also Shepard v. United States*, 544 U.S. 13, 26 (2005). The modified categorical approach "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime." *Descamps*, 570 U.S. at 263. "All the modified approach adds is a mechanism for making that comparison when a statute lists multiple, alternative elements, and so effectively creates several different crimes." *Id.* at 263–264 (internal alteration and quotation marks omitted) (citing *Nijhawan v. Holder*, 557 U.S. 29, 41 (2009)).

A statute is "indivisible," and thus not amenable to application of the modified categorical approach, if it "sets out a single . . . set of elements to define a single crime."

7

*Mathis*, 136 S. Ct. at 2248. Of course, an indivisible statute may identify alternative means by which a violation of the single enumerated crime can be accomplished. *Id.* at 2249. Thus, "[t]he first task for a . . . court faced with an alternatively phrased statute is . . . to determine whether its listed items are elements or means." *Id.* at 2256. "If they are elements," the court applies the modified categorical approach, "review[ing] the record materials to discover which of the enumerated alternatives" was the basis for the defendant's conviction, and then "compar[ing] that element (along with all others [relevant in the particular context]) to those of the generic crime." *Id.* But if the listed alternatives are means, then the court "has no call to decide which of the statutory alternatives was at issue in the earlier prosecution." *Id.*

When making this critical determination—elements or means—the Supreme Court has directed courts to look first to "authoritative sources of state law." *Id.*; *see also United States v. Jackson*, 713 Fed. App. 172, 175 (4th Cir. 2017) (per curiam). When a State's judiciary has addressed the question, we "need only follow what it says." *Mathis*, 136 S. Ct. at 2256. If "state law fails to provide clear answers," then we may look to "the record of [the] prior conviction itself" to discern if statutory alternatives are elements or means. *Id.* at 2256–2257; *see also Descamps*, 570 U.S. at 264 n.2.

B.

The statute under which Bah was convicted, Virginia Code § 18.2-250(A), makes it "unlawful for any person knowingly or intentionally to possess a controlled substance" without a valid prescription from a medical professional or as otherwise authorized by law. Four subsections identify the punishments applicable to various categories of controlled

8

substances. The subsection under which Bah was convicted provides that "[a]ny person who violates this section with respect to any controlled substance classified in Schedule I or II of the Drug Control Act shall be guilty of a Class 5 felony." Va. Code § 18.2-250(A)(a).[3] It is undisputed that Virginia's Schedules I and II penalize the possession of some substances not illegal under federal law. Thus, the Virginia statute under which Bah was convicted is overbroad and can render him removable only if the statute is divisible.

Bah's primary argument is that Section 18.2-250(A)(a) is indivisible. He contends that the crime set forth in the statute has two elements: (1) possession of a Schedule I or II controlled substance, and (2) knowledge that the substance is a controlled substance. The "actual identity of the drug," Bah asserts, is not an element, only a means by which the first element is established. Alternatively, Bah argues that even if Section 18.2-250(A)(a) is divisible, it is divisible by schedule, not substance. The Government advances the contrary view, arguing that the identity of the particular controlled substance is a required element.

We believe the Government has the better reading of Virginia law. Both parties rely primarily on a decision of the Virginia Court of Appeals, *Sierra v. Commonwealth*, 722 S.E.2d 656 (Va. Ct. App. 2012). In *Sierra*, the issue was whether Section 18.2-250 required a defendant "to know the exact substance he is possessing"; Sierra argued that the evidence did not prove he "knew he possessed methylphenidate." 722 S.E.2d at 658; *see id.* at 657 n.1. Importantly for our purposes, in addressing this question the *Sierra* court contrasted

_____

[3] Both "controlled substance" and the various schedule classifications are defined terms. *See* Va. Code § 18.2-247(A), § 54.1-3400 *et seq.* Virginia's Schedule I, the schedule containing MDMA and its variants, is codified at Virginia Code § 54.1-3446.

9

the statute's *mens rea* and *actus reus* requirements, stating: "The *specific type of substance* found in a defendant's possession is an *actus reus* element the Commonwealth must prove pursuant to subparts (a)–(c) of Code § 18.2-250(A), but it is not an element to which the *mens rea* requirement found earlier in Code § 18.2-250(A) applies." *Id.* at 660 (emphasis added). This pronouncement—that the specific identity of the substance is an element of the crime—establishes that Section 18.2-250(A)(a) is divisible by the particular controlled substance possessed.

Reading the court's recitation of Virginia law in context, we cannot accept Bah's argument that the "specific type of substance" in *Sierra* refers to the relevant schedule rather than the particular substance possessed. Although *Sierra* primarily addressed the statute's *mens rea* requirement, the court repeatedly defined its inquiry in terms of the precise identity of the controlled substance at issue. *See*, *e.g.*, 722 S.E.2d at 657 (framing argument as concerning knowledge of "the particular substance found in his possession"); *id.* at 657 n.1 (quoting Sierra's argument about his awareness of "the particular substance, i.e., Concerta"); *id.* at 658 (noting argument that the evidence was insufficient to prove Sierra "knew he possessed methylphenidate, or Concerta"); *id.* (identifying the question as "whether Code § 18.2-250 requires a defendant to know the exact substance he is possessing" or "precisely what controlled substance it is"); *id.* at 662 (referring to "the precise identity of that substance" and "exactly what substance he has"). This context confirms that when the court concluded "[t]he specific type of substance" is not an element of Section 18.2-250(A)(a)'s *mens rea* requirement, but is "an *actus reus* element the Commonwealth must prove," the court was referring to the specific identity of the

10

controlled substance possessed, not merely its classification on Virginia's controlled substance schedules. *Id.* at 660.

The parties also direct our attention to a recent memorandum decision of the Virginia Court of Appeals, *Howard v. Commonwealth*, No. 0780-17-1, 2018 WL 2604993 (Va. Ct. App. June 5, 2018), which Bah cited in his immigration proceedings below, and which supports this interpretation of Section 18.2-250(A)(a). In *Howard*, the defendant possessed a single capsule that contained two controlled substances, heroin and fentanyl. *Id.* at *1. He was convicted of two violations of Section 18.2-250. *Id.* On appeal, the defendant argued that the Commonwealth had failed to prove that he had "knowingly and intentionally possessed two different controlled substances" because the substances were inside a single capsule and "appeared visually uniform." *Id.* The *Howard* court, quoting its opinion in *Sierra*, reiterated that "the *actual substance* in a defendant's possession 'is an *actus reus* element the Commonwealth must prove pursuant to [the statute], but it is not an element to which the *mens rea* requirement . . . applies.'" *Id.* at *4 (emphasis added) (quoting *Sierra*, 722 S.E.2d at 660). The court affirmed both convictions, explaining that the relevant "unit of prosecution" under the statute is each specific, individually-identified substance, reflecting the Virginia Legislature's intent "to convict and punish separately . . . the possession of each controlled substance" possessed by a defendant. *Id.* at *3.

11

Other decisions from the Virginia Court of Appeals reflect a similar focus on the specific identity of the controlled substance.[4]  As the court has explained, "a successful drug prosecution must establish both the existence of a proscribed substance and an accused's unlawful activity with respect to it." *Hinton v. Commonwealth*, 421 S.E.2d 35, 37 (Va. Ct. App. 1992).  The "nature of the illegal substance" can be proven directly (by forensic testing) or circumstantially (by testimony about the nature of the substance). *Id.* For example, "[p]roof that [a] substance was cocaine" could be provided by testimony about "'the physical appearance of the substance,'" testimony that "'the substance produced the expected effects when sampled by someone familiar with the illicit drug,'" or "'evidence that the substance was called by the name of the illegal narcotic by the defendant or others in his presence.'" *Hill v. Commonwealth*, 379 S.E.2d 134, 136 (Va. Ct. App. 1989) (quoting *United States v. Dolan*, 544 F.2d 1219, 1221 (4th Cir. 1976)); *see id.* ("Users and addicts, if they have gained a familiarity or experience with a drug, may

---

[4] The dissent discusses two cases from the Virginia Supreme Court but rightly acknowledges that they do not "explicitly address whether a specific scheduled controlled substance constitutes an element of the offense." *Infra* at 25. *Young v. Commonwealth*, 659 S.E.2d 308 (Va. 2008), concerned the *mens rea* element and, consistent with other Virginia precedent, explained that the defendant's knowledge of the "nature and character" of the drug could be established by circumstantial evidence "such as the drug's distinctive odor or appearance, or statements or conduct of others in his presence that would tend to identify it." *Id.* at 310. *Herrington v. Commonwealth*, 781 S.E.2d 561 (Va. 2016), did not discuss the elements of the offense at all.  The question in that case was whether "the district court's finding of probable cause for the charge of simple possession []or its finding of no probable cause for the charge of possession with intent to sell or distribute precluded the Commonwealth from obtaining an indictment on a charge of possession with intent to sell or distribute." *Id.* at 564.  The identity of the controlled substance was not pertinent to this legal question.

identify it."). The type of circumstantial evidence accepted by Virginia courts reinforces the notion that it is the particular identity of the substance that is relevant under Virginia law. Indeed, the emphasis on how the Commonwealth can prove the specific identity of the controlled substance would be unwarranted if Virginia law were satisfied merely with proof that the substance, whatever it was, was prohibited.[5]

Virginia's Model Jury Instructions reinforce our understanding that the identity of the controlled substance is an element of the crime in Section 18.2-250(A)(a). The relevant instruction first informs the jury that the "defendant is charged with [the] crime of possessing (name of drug), which is a Schedule [I; II; III] controlled substance." Va. Model Jury Inst. Crim. No. 22.500(a) (Sept. 2018) (first brackets added). It then explains that the "Commonwealth must prove beyond a reasonable doubt that the defendant knowingly and intentionally possessed (name of drug)." *Id.* And it ends with the admonition that "[i]f

---

[5] Both Bah and the Government also cite cases analyzing the divisibility of other States' drug laws. Because we find the Virginia courts' construction of Section 18.2-250 to be controlling, a close examination of those cases is unnecessary. *See Mathis*, 136 S. Ct. at 2256 (when "a state court decision definitively answers the question" of whether statutory alternatives are elements or means, a federal court "need only follow what it says"). Nevertheless, we note that several of our sister circuits have concluded that state statutes similar to Virginia's Section 18.2-250 are divisible by specific substance. *See*, *e.g.*, *Raja v. Sessions*, 900 F.3d 823, 828–829 (6th Cir. 2018) (concluding that Pennsylvania's controlled substance statute is divisible because "each type of controlled substance is a separate element," relying on Pennsylvania precedent that "upheld consecutive sentences for the delivery of two different controlled substances in a single vial"); *see also Martinez*, 893 F.3d at 1071–1073 (finding Missouri's statute divisible by substance); *Guillen*, 910 F.3d at 1176 (same for Florida); *United States v. Martinez-Lopez*, 864 F.3d 1034, 1040 (9th Cir. 2017) (en banc) (same for California). *But see Najera-Rodriguez v. Barr,* 926 F.3d 343, 347 (7th Cir. 2019) (Illinois statute is "not divisible"); *Harbin v. Sessions*, 860 F.3d 58, 68 (2d Cir. 2017) (New York statute "is indivisible").

you find that the Commonwealth has failed to prove beyond a reasonable doubt that the defendant possessed (name of drug), then you shall find the defendant not guilty." *Id.* The import of these instructions is clear: If the factfinder cannot determine beyond a reasonable doubt that the defendant possessed the *specific controlled substance alleged*, then the defendant is not guilty because the Commonwealth failed to prove an element of the offense.

Furthermore, the Commonwealth's decision to amend Bah's indictment to reflect the results of forensic testing, which revealed the substance to be ethylone rather than generic MDMA, suggests that the specific identity of the substance is an element, not a means. *See Mathis*, 136 S. Ct. at 2256–2257 (authorizing a "peek at the record documents" "for the sole and limited purpose of determining whether the listed items are elements of the offense" (internal quotation marks and alteration omitted)). Virginia's Schedule I outlaws possession of both generic MDMA and ethylone, *see* Va. Code § 54.1-3446, so if the identity of the substance were merely a means, Bah's original indictment would have been legally sufficient and amendment unnecessary.

Because Virginia authority requires the Commonwealth to prove "[t]he specific type of substance found in a defendant's possession," *Sierra*, 722 S.E.2d at 660, the drug's identity is an element of the crime, not merely a means. We therefore conclude that Section 18.2-250(A)(a) is divisible by substance and the modified categorical approach is appropriate.

14

C.

Application of the modified categorical approach here is straightforward. "This approach permits courts to 'examine a limited class of documents'" such as "charging documents" and "findings of fact and conclusions of law from a bench trial" to determine "which of a statute's alternative elements formed the basis of the defendant's prior conviction." *Larios-Reyes v. Lynch*, 843 F.3d 146, 153 & n.1 (4th Cir. 2016) (quoting *Descamps*, 133 S. Ct. at 2284, and *Johnson v. United States*, 559 U.S. 133, 144 (2010)). Count 1 of the amended indictment charged Bah with possessing "3,4-methylenedioxyethcathinone (ethylone)" or, depending on how one reads the handwriting, "(ethylene)." A.R. 261. The parties agree that, regardless of the handwritten word in parentheses, the amended indictment correctly identified ethylone by its scientific name, 3,4-methylenedioxyethcathinone. *See* Oral Arg. at 6:01–6:23, 23:34–23:56. The circuit court, in its judgment order after the bench trial, found Bah guilty "as charged in Count One of the indictment as amended." A.R. 264. The fact that the court misspelled the substance as "ethylene" instead of "ethylone"—among other misspellings in the order—does not render Bah's record of conviction inconclusive, in light of the court's specific reference to Count 1 of the amended indictment, which identified ethylone by its scientific name.[6]

---

[6] The circuit court appears to have committed a "scrivener's error," which "result[s] from a minor mistake or inadvertence and not from judicial reasoning or determination"; this type of "drafter's or typist's technical error . . . can be rectified without serious doubt about the correct reading." "Error," *Black's Law Dictionary* (11th ed. 2019). As previously noted, ethylene is not a controlled substance under either Virginia or federal

15

Because ethylone is a controlled substance under both Virginia and federal law, there is a categorical match between the comparable elements. Accordingly, Bah's conviction qualifies as a "violation of . . . any law or regulation of a State . . . relating to a controlled substance (as defined in [federal law])," 8 U.S.C. § 1227(a)(2)(B)(i), and the BIA did not err when it determined Bah was removable on account of that conviction. Bah's operative petition for review, number 18-2106, is therefore

*DENIED*,

and his moot petition, number 18-1877, is

*DISMISSED*.

---

law. Contrary to the dissent's concern, *see infra* at 38–39, if Bah had been convicted of possessing ethylene, which is not illegal in Virginia, he would have had a powerful incentive to challenge his conviction, as he would have committed no crime.

16

THACKER, Circuit Judge, dissenting:

As the majority explains, the Board of Immigration Appeals ("BIA") ordered Petitioner's deportation pursuant to 8 U.S.C. § 1227(2)(B)(i), which defines deportable persons to include, in relevant part, "[a]ny alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State . . . relating to a controlled substance." Therefore, our central question is whether Petitioner's Virginia conviction was for a violation "relating to a controlled substance."

I respectfully dissent from the majority's decision concluding that Petitioner's prior conviction constitutes a categorical match to the relevant federally defined offense "relating to a controlled substance" as specified in the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(B)(i). As detailed below, the majority analysis falters at several points.

To begin, in order to determine whether a prior state conviction subjects a person to removal pursuant to the INA, we apply the categorical approach. *See Mellouli v. Lynch*, 135 S. Ct. 1980, 1985–86 (2015). The categorical approach requires that "we look not to the facts of the particular prior case, but instead to whether the state statute defining the crime of conviction categorically fits" with the crime identified in the INA. *United States v. Lopez-Collazo*, 824 F.3d 453, 463 (4th Cir. 2016) (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013)). The federal offense "must be viewed in the abstract, to see whether the state statute shares the nature of the federal offense that serves as a point of comparison." *Moncrieffe*, 569 U.S. at 190.

17

Categorical approach analysis "focus[es] solely on whether the elements of the crime of conviction sufficiently match the elements of [the generic federal offense], while ignoring the particular facts of the case." *Mathis v. United States.*, 136 S. Ct. 2243, 2248 (2016). For proper comparison, the elements included in the state offense must be precisely identified. *See id.* A statute setting out a single set of elements defining a single crime is considered "indivisible," meaning the categorical approach can be straightforwardly applied to determine whether the state crime's elements match the federal offense. *Id.*

By contrast, other statutes "may list elements in the alternative, and thereby define multiple crimes." *Mathis*, 136 S. Ct. at 2249. These "divisible" statutes require courts to determine which of the alternative elements served as the basis for the state conviction, so that *those* specific elements can be compared with the federal offense. *Id.* "[W]hen a prior conviction is for violating a so-called 'divisible statute,'" we apply a "modified categorical approach." *Descamps v. United States,* 570 U.S. 254, 257 (2013). The modified categorical approach "permits a court to determine which statutory phrase was the basis for the conviction" by consulting the defendant's record of conviction. *Johnson v. United States*, 559 U.S. 133, 144 (2010) (citations omitted). Using the modified categorical approach, courts may "look[ ] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Mathis*, 136 S. Ct. at 2249 (citation omitted). The court then evaluates whether that crime categorically matches the federally defined offense. *Id.*

In my view, the majority opinion improperly truncates the proper analysis here at the very first step, by concluding that Virginia courts have clearly spoken on the issue at hand, that is, whether controlled substance identity is an element of Appellant's offense of conviction. In support of the opinion that controlled substance identity is an element, the majority leans on Virginia case law. But, respectfully, a single *ambiguous* published state appellate court decision paired with an *unpublished* appellate memorandum decision do not clearly state anything definitive. To the contrary, here, where we cannot be certain as to whether the specific identity of a controlled substance is an element of Virginia law, we cannot determine that Petitioner's prior offense is a categorical match to the INA-defined offense. Therefore, we cannot allow the Virginia offense to trigger federal immigration consequences. This is too harsh a consequence in the face of such ambiguity.

I.

Applying the Categorical Approach

Although the majority identifies the correct analytical framework, it errs in applying this framework. The below categorical approach evaluation of Petitioner's conviction explains where the majority goes off track.

Foreshadowing how the majority ends up short-circuiting the entire analysis, from the outset the majority opinion characterizes Petitioner's prior conviction as being "for possession of ethylone." Ante at 3. This assumes an answer to the question we are supposed to be asking: how does Virginia define its controlled substance possession convictions? Is it "possession of a controlled substance"? "Possession of a schedule I or II controlled substance?" Or is it in fact "possession of [specific controlled substance, such

19

as heroin]?" It is our responsibility to determine whether an individual can be convicted of possession pursuant to Virginia Code section 18.2-250(A) without the specific identity of the controlled substance necessarily being proven. As explained below, there is nothing to support the view that a conviction could not occur even if, as between possible substances on a schedule, a factfinder has not been convinced of which exact substance was present.

Petitioner was convicted pursuant to Virginia Code section 18.2-250(A), which makes it "unlawful for any person knowingly or intentionally to possess a controlled substance," with limited exceptions. "Controlled substance" is defined in Virginia law as "a drug, substance, or immediate precursor in [state] Schedules I through VI."[1] Va. Code Ann. § 54.1-3401. A person who violates Virginia Code section 18.2-250 "with respect to any controlled substance classified in Schedule I or II of [Virginia's] Drug Control Act shall be guilty of a Class 5 felony," again with limited exceptions. Va. Code Ann. § 18.2-250(A)(a). Different punishments are separately specified for Schedules III–VI. Va. Code Ann. §§ 18.2-250(A)(b) – 18.2-250(A)(c). Like the federal controlled substances regime, each of Virginia's schedules lists various criminalized substances by name. *See* Va. Code Ann. §§ 54.1-3446 – 54.1-3455.

---

[1] An "immediate precursor" to a controlled substance is "a substance which the [Virginia] Board of Pharmacy has found to be and by regulation designates as being the principal compound commonly used or produced primarily for use, and which is an immediate chemical intermediary used or likely to be used in the manufacture of a controlled substance, the control of which is necessary to prevent, curtail, or limit manufacture." Va. Code Ann. § 54.1-3401.

Both parties concede that, on its face, Virginia's drug possession statute is overbroad, meaning the state law prohibits conduct not criminalized at the federal level. Petitioner provided an expert's affidavit concluding that Virginia's drug schedules contain at least 52 substances not found on federal schedules, including 42 substances on Virginia's Schedule I alone. A.R. 387.[2] Therefore, in order to determine whether Petitioner's conviction categorically matches the federally defined offense, we must first decide whether Virginia's overinclusive schedules are divisible down to specific controlled substance identity such that Petitioner's conviction could be further evaluated using the modified categorical approach. If not, our inquiry must end with the determination that the statute is indivisible as to controlled substance identity and thus cannot be a categorical match due to the overbreadth of the schedules.

When a statute strings together a list of alternatives, as the controlled substances schedules do here, determining whether the law is divisible or indivisible hinges on whether the statute's list enumerates alternative *elements* that must be proven beyond a reasonable doubt as opposed to merely alternative *means* of satisfying a single element. *Mathis*, 136 S. Ct. at 2248–49. "A criminal offense is 'divisible' only 'when a statute lists multiple, alternative elements, and so effectively creates several different crimes.'" *United States v. Hemingway*, 734 F.3d 323, 331 (4th Cir. 2013) (quoting *Descamps*, 570 U.S. at 263–64).

---

[2] Citations to the "A.R." refer to the Administrative Record filed by the parties in this appeal.

"Elements are the constituent parts of a crime's legal definition -- the things the prosecution must prove to sustain a conviction." *Mathis*, 136 S. Ct. at 2248 (internal quotation marks omitted). "A prosecutor charging a violation of a divisible statute must generally select the relevant element from its list of alternatives." *Descamps*, 570 U.S. at 272. The factfinder "must then find that element, unanimously and beyond a reasonable doubt." *Id.*

But instead of identifying elements, a statute's alternatives list may simply enumerate the variety of means by which a single element of a particular offense can be proven. *Mathis*, 136 S. Ct. at 2249. The Supreme Court explained this concept in *Mathis v. United States* by describing a statute requiring use of a "deadly weapon" and defining deadly weapon to include a "knife, gun, bat, or similar weapon." *Id.* at 2249 (citations omitted). Such a statute would allow a jury to convict, "even if some jurors concluded that the defendant used a knife while others concluded he used a gun, so long as all agreed that the defendant used a deadly weapon." *Id.* (internal quotation marks omitted). A list of means thus presents "disjunctive factual scenarios rather than separate elements, so that a [factfinder] need not make any specific findings. . . on that score." *Id*.

The question here is whether Virginia's law provides its list of controlled substances as alternative *elements* defining separate controlled substance possession offenses, or as alternative factual *means* of satisfying the "controlled substance" element of a single type of controlled substance possession crime.

The Supreme Court provides a formula for this "threshold" elements-versus-means inquiry. *Mathis*, 136 S. Ct. at 2256. The Court first directs us to determine if "a state court

22

decision definitively answers the question." *Id.* If not, "the statute on its face [might] resolve the issue." *Id.* Where "state law fails to provide clear answers," the Court instructs us to look at the record of the prior conviction itself "for the sole and limited purpose of determining whether the listed items are elements of the offense." *Id.* at 2256–57 (internal quotation marks omitted).

As provided in *Shepard v. United States*, an underlying "record of conviction" is limited to charging documents, jury instructions, plea colloquies and plea agreements, "or to some comparable judicial record of this information." 544 U.S. 13, 25–26 (2005). "In cases tried without a jury, the closest analogs to jury instructions would be a bench-trial judge's formal rulings of law and findings of fact . . . ." *Id.* at 20. This is the same set of "*Shepard* documents" that would be evaluated using the modified categorical approach if a statute is determined to be divisible. *Mathis*, 136 S. Ct. at 2249. At the "elements-versus-means" stage, we look to these documents only to see whether they make clear that a defendant's conviction rested on a single enumerated alternative that would have been proven beyond a reasonable doubt.

Because the majority predetermines a conclusion -- that Petitioner's controlled substance offense should "count" for immigration purposes -- its analysis is flawed from its inception. In applying *Mathis*, the majority veers off course at the very first turn. Faced with an array of Virginia court decisions, the majority selectively ignores controlling case law to make it appear as though the state courts have spoken clearly. And, in so doing, the majority never reaches the second step prescribed by *Mathis* -- analysis of the state statute's

23

language. Thereby, the majority dodges having to consult Petitioner's garbled record of conviction at the third step.

The majority rests the entire outcome of this case on supposedly clear Virginia law. But they do not and cannot point to Virginia courts "definitively answer[ing]" our question. *Mathis*, 136 S. Ct. at 2256. We should not be guessing on this issue. Even if it seems quite likely that Virginia considers controlled substance identity to be an element, that is not enough; we need to be certain, otherwise we cannot hold the statute to be divisible.

Under a complete application of *Mathis* to this case, contrary to the majority's conclusion otherwise, at every stage, unescapable ambiguity dictates that Petitioner's conviction is not a categorical match to the INA-defined offense. For the sake of clarity in the midst of all the ambiguity in this case, I have attached as appendices two flowcharts illustrating the correct application of *Mathis* and the categorical approach.

A.

*Mathis* step one: Virginia state court decisions

1.

We look first to Virginia's state court decisions. *Mathis*, 136 S. Ct. at 2256–57 (looking first to state precedent and explaining that, where a state decision "definitively answers the question, . . . . [we] need only follow what it says" (citation omitted)). "[A] federal court is bound by the state supreme court's interpretation of state law, including its determination of the elements of the potential predicate offense." *Hemingway*, 734 F.3d at 333 (internal quotation marks omitted). A survey of the landscape reveals that Virginia courts have been anything but clear on the question at hand. The limited available

24

precedent makes obvious that a "definitive[ ] answer" is nowhere to be found. *Mathis*, 136 S. Ct. at 2256.

Of note, the majority's conclusion is contradicted by the most recent published case by Virginia's highest court addressing indictment pursuant to Virginia Code section 18.2-250. The defendant in *Herrington v. Commonwealth* disputed his grand jury indictment for the sale/distribution offense pursuant to Virginia Code section 18.2-248. 781 S.E.2d 561, 563 (Va. 2016). There, the defendant was first charged pursuant to Virginia Code section 18.2-248 with "possession of a Schedule I or II controlled substance with the intent to sell or distribute," but the district court reduced the charge to "possession of a Schedule I or II controlled substance in violation of Code § 18.2-250." *Herrington*, 781 S.E.2d at 562–63. *Herrington* does not explicitly address whether a specific scheduled controlled substance constitutes an element of the offense. But the state supreme court's characterization of the charges as "possession of a Schedule I or II controlled substance" suggests that controlled substance identity is not an element "going toward the creation of separate crimes," *Mathis*, 136 S. Ct. at 2250, but rather alternative means of satisfying the "Schedule I or II controlled substance" component of the "charge of simple possession of a controlled substance," *Herrington*, 781 S.E.2d at 564. If controlled substance identity *were* an element, per *Mathis*, the Virginia Supreme Court would refer to the controlled substance offense by the specific substance implicated. *Mathis*, 136 S. Ct. at 2249 (saying alternative elements "define multiple crimes"). But it did not.

Instead, the entire *Herrington* opinion lacks any reference at all to the precise substance the defendant possessed and, throughout, only discusses the charges pursuant to

25

Virginia Code section 18.2-250 as "possession of a Schedule I or II controlled substance." Given that *Herrington* deals with the sufficiency of the indictment and the comparison of two separate controlled substance charges (distribution versus simple possession), one would expect the court to have been careful in its definition of each crime. Further, and perhaps even more telling, the *Herrington* court explicitly states that the indictment for "schedule I or II controlled substance possession" met the requirements of Virginia Code section 19.2-220, which (among other things) expressly requires an indictment to describe the offense charged. *Herrington*, 781 S.E.2d at 563 & n.3. If the defendant's offense were more specific – "MDMA possession," for example -- surely the Virginia Supreme Court would not have approved of the generalized "schedule I or II" indictment.

For his part, Petitioner directs our attention to *Young v. Commonwealth*, a 2008 Virginia Supreme Court case. 659 S.E.2d 308 (Va. 2008). There, a defendant "was indicted for possession of a Schedule I or Schedule II controlled substance in violation of [Va.] Code § 18.2-250." *Id.* at 309. Though the parties had briefed the court using the phrase "conviction for possession of morphine,"[3] Virginia's highest court nonetheless used the more generic phrasing in describing and evaluating the conviction. *Id.* ("The defendant was indicted for possession of a Schedule I or Schedule II controlled substance in violation of Code § 18.2-250.").

---

[3] *See* Brief of Appellant, *Young v. Commonwealth*, 659 S.E.2d. 308 (Va. 2008) (No. 071436), 2007 WL 5323167, at *13; Brief for the Commonwealth, *id.*, 2007 WL 5323168, at *1 (" . . . convicted Young of possession of morphine . . .").

26

But still other Virginia Supreme Court cases *have* described a defendant's controlled substance possession offense specifically. *See, e.g.*, *Burnham v. Commonwealth,* 833 S.E.2d 872, 873 (Va. 2019) ("convicted . . . of possession of cocaine"); *Perry v. Commonwealth*, 701 S.E.2d 431, 434 (Va. 2010) ("guilty of possession of PCP"). Unlike *Herrington*, these cases did not closely evaluate the indictments so the court had less reason to focus on the precise phrasing and sufficiency of their contents. Because *Herrington* and *Young* do not speak directly to the elements-versus-means issue, and because the Virginia Supreme Court otherwise refers inconsistently to the state's simple possession offense, I cannot say that the state's highest court "definitively answers" our question. *Mathis*, 136 S. Ct. at 2256.

2.

a.

Virginia's lower courts offer some guidance, but still fail to conclusively establish that controlled substance identity is an element of the offense. The majority leans heavily on *Sierra v. Commonwealth*, 722 S.E.2d 656 (Va. Ct. App. 2012). The majority cites *Sierra* for its conclusion that "[t]he specific type of substance found in a defendant's possession is an *actus reus* element the Commonwealth must prove pursuant to subparts (a)-(c) of Code § 18.2-250(A)." *Id.* at 660. The majority is of the view that this conclusively establishes that a controlled substance's identity is an element to be proven. Petitioner, however, contends that the statement should be read only to mean the *type* -- i.e. *schedule* -- of a controlled substance must be proven "pursuant to" the subparts cited, which break down punishments by schedule.

27

In Petitioner's view, the *Sierra* court uses the word "type" to refer to controlled substance schedules. The *Sierra* court explained, "[t]he only differentiation in the statute between various *types* of controlled substances appears in later subparts, which prescribe different classifications of the level of offense based on the *type* of controlled substance a defendant actually possesses." 722 S.E.2d at 659 (emphasis supplied). These "later subparts" do not name specific controlled substances; they refer only to the different schedules. *See* Va. Code Ann. § 18.2-250(A)(a)-(c). The court goes on to say, "[b]ased on what *type* of controlled substance is actually found in the defendant's possession, the legislature has demonstrated its intent to impose different levels of punishment for the possession of different *types* of controlled substances." *Sierra*, 722 S.E.2d at 660 (emphasis supplied). But significantly, the court uses a different phrase later, when it says that a defendant who knows he possesses a controlled substance "bears the risk of incurring whatever punishment the General Assembly has prescribed for the possession of the *specific substance* he has." *Id.* (emphasis supplied).

Because the *Sierra* court used both the phrases "specific substance" and "types of controlled substances" in its opinion, I cannot conclude that Virginia's courts have spoken clearly through *Sierra*. The *Sierra* court could have said that "[t]he specific [*substance*] found in a defendant's possession is an *actus reus* element the Commonwealth must prove pursuant to subparts (a)-(c) of Code § 18.2-250(A)." *Sierra*, 722 S.E.2d at 660. (substitution mine). It did not. Instead, the court used the word "type," as it did throughout the opinion to refer to the division of controlled substances along schedule lines for

28

different levels of punishment in "subparts (a)-(c) of Code § 18.2-250(A)."[4] Furthermore, *Sierra* is a midlevel appellate decision, not one from the Virginia Supreme Court. As a result, I cannot conclude controlled substance identity is (or is not) an element on the basis of this case alone.

b.

The majority also cites to *Howard v. Commonwealth*, No. 0780-17-1, 2018 WL 2604993 (Va. Ct. App. June 5, 2018). But an *unpublished* <u>intermediate</u> appellate court decision could never speak "definitively" on behalf of Virginia state courts. *Mathis*, 136 S. Ct. at 2256. Unpublished opinions of the Court of Appeals of Virginia have no precedential value. Va. Code Ann. § 17.1-413; *see Sheets v. Castle*, 559 S.E.2d 616, 619 (Va. 2002). Not only is *Howard* meaningless in terms of what we can know about Virginia state courts' view of the law, but the majority misreads *Howard*.

First, the majority opinion states, "[t]he *Howard* court, quoting its opinion in *Sierra*, reiterated that 'the <u>actual substance</u> in a defendant's possession is an *actus reus* element.'" Ante at 11 (quoting *Howard*, No. 0780-17-1, 2018 WL 260499, at *4 (emphasis supplied)). But this quote from *Howard* significantly misstates *Sierra*. As discussed above, *Sierra* says "[t]he <u>specific type</u> of substance found in a defendant's possession is an *actus reus* element." *Sierra*, 722 S.E.2d at 778 (emphasis supplied). *Sierra* does not say "the <u>actual</u>

---

[4] Like the *Herrington* and *Young* courts, the *Sierra* court read the relevant defendant's record generically, as conviction for "possession of a controlled substance, in violation of Code § 18.2-250." *Sierra v. Commonwealth*, 722 S.E.2d, 656, 657 (Va. Ct. App. 2012). The *Sierra* court used this framing of the offense despite the indictment having named the *precise* controlled substance in question. *Id.* at 657.

29

substance" is the element, so *Howard* cannot be "reiterat[ing]" what *Sierra* said on that point. Ante at 11.

Second, the majority opines that we should take *Howard*'s description of the "unit of prosecution" to mean that a specific controlled substance's identity must be proven. Ante at 11. But *Howard* itself and double jeopardy principles are at odds with that conclusion. Another Virginia court decision -- *this one published* -- provides an analogy to help make this clear.

In *Fullwood v. Commonwealth*, a defendant argued that his multiple convictions pursuant to Virginia's controlled substance distribution statute "violate[d] double jeopardy principles by punishing the same conduct twice," where he possessed two controlled substances simultaneously. 676 S.E.2d 348, 351 (Va. Ct. App. 2009). But the *Fullwood* court believed the Virginia Supreme Court had "rejected this approach" in an analogous setting. *Id.* In a case where nine obscene magazines were purchased in two transactions, the Virginia Supreme Court had rejected a double jeopardy challenge by explaining, "[t]he gravamen of the offense is the sale of a single obscene item," because "the statutory language shows an unmistakable legislative intent that the sale of each obscene magazine shall constitute a separate offense." *Educ. Books, Inc. v. Commonwealth*, 323 S.E.2d 84, 86 (Va. 1984).

Here, as the *Howard* court notes, Virginia's legislature selected language, "*a*" and "*any*" controlled substance, which reflects an "intent to convict and punish separately for the possession of each controlled substance" the defendant possessed. *Howard*, No. 0780-17-1, 2018 WL 2604993, at *3. So as in *Fullwood*, it makes sense that "possession of each

30

illegal substance amount[s] to a separate violation of the statute." 676 S.E.2d at 351. But this does not lead to the conclusion that the identity of each substance is what needs to be proven. Instead, what matters is the *number* -- not the identity -- of the prohibited items involved. *See Educ. Books*, 323 S.E.2d at 86 (affirming nine convictions because each of defendant's nine magazines could support a charge such that there "were nine separate offenses").

If an individual was found to possess two substances, Substance 1 (being scheduled Drug A) and Substance 2 (being either scheduled Drug B or C), a factfinder could be convinced beyond a reasonable doubt that a defendant possessed more than one controlled substance pursuant to state law and therefore be found to have violated the statute twice. But there is no Virginia authority that requires the precise identity of Substance 2 to be proven beyond a reasonable doubt for this to be true. As long as the factfinder was sure Substance 2 was a scheduled controlled substance other than Drug A, two convictions could be possible even if the factfinder was not convinced beyond a reasonable doubt that Substance 2 was definitively Drug B or definitively Drug C. *C.f. Mathis*, 136 S.Ct. at 2249 ("A jury could convict even if some jurors concluded that the defendant [possessed Drug B], while others concluded he [possessed Drug C], so long as all agreed that the defendant [possessed a controlled substance]." (internal quotation marks omitted) (substitutions mine)). In other words, the factfinder must be convinced that the defendant possessed more than one controlled substance, but not necessarily convinced which exact controlled substance Substance 2 was. Controlled substance identity here is only important insofar as the prosecution must prove Substance 2 is not simply more of Substance 1.

31

3.

This analysis has important implications in the categorical approach context: If we assume Drug C is not federally criminalized, we could not be certain that the second controlled substance possession conviction was a match for the federal offense, even though a double jeopardy problem might have been avoided and the prosecution was required to prove the defendant possessed more than one controlled substance.

Though it would make our job easier, Virginia state courts simply have not spoken clearly on this question. As explained above, proving two violations of Virginia law might not necessarily require a second substance's precise identity to be proven beyond a reasonable doubt. Second, even if we are not convinced by this analysis, all we have in Virginia to say that two controlled substances possessed together would in fact support two convictions pursuant to Virginia Code section 18.2-250 is the unpublished *Howard* case, which has no precedential value. *See* Va. Code Ann. § 17.1-413. The most we can legitimately glean from *Howard* is that possession of more than one controlled substance might support multiple convictions in Virginia. Nothing more.

The other Virginia appellate court decisions relied on by the majority as providing "a similar focus" are similarly hazy. Ante at 12. The fact that a prosecution must establish "the existence of a proscribed substance," *Hinton v. Commonwealth*, 421 S.E.2d 35, 37 (Va. Ct. App. 1992), does not mean that the identity rather than simply the proscribed nature of the substance must be proven. Put another way, requiring proof that a substance is scheduled does not mean that we need further proof as between controlled substances on the same schedule.

32

The majority attempts to bolster its opinion by asserting that discussions in Virginia appellate cases defining acceptable types of circumstantial evidence "would be unwarranted if Virginia law were satisfied merely with proof that the substance, whatever it was, was prohibited." *See, e.g.*, Ante at 13 (quoting *Hill v. Commonwealth*, 379 S.E.2d 134, 136 (Va. Ct. App. 1989) ("Users and addicts, if they have gained familiarity or experience with a drug, may identify it.")). But Virginia's basic rules on the types of evidence used to "establish [ ] the *existence* of a proscribed substance" tell us nothing about whether controlled substance identity necessarily must be proven to support a conviction. Ante at 12 (emphasis supplied) (quoting *Hinton*, 421 S.E.2d at 37). To further tease out the hypothetical, in order to prove that Substance 2 was a controlled substance, we would look for evidence to indicate that it was either Drug B or C, and the type of circumstantial evidence the majority references could be used. But we do not know that a conviction would not stand if the circumstantial evidence convinced some individuals on a jury that it was Drug B and others that it was Drug C, as long as both controlled substances were scheduled for the same penalties. *See Mathis*, 136 S.Ct. at 2249. Thus, at core, the majority analysis deviates from *Mathis*'s simple command to determine whether the state's courts speak clearly on the elements-versus-means question. *Id.* at 2256. On the whole, I cannot agree with the majority that Virginia case law "definitively answers" our elements-versus-means question, because it doesn't. *Id.* [5]

---

[5] The majority opinion concludes its analysis of Virginia court decisions with reference to several *other* states' controlled substance laws, though it remarks that "[b]ecause . . . the Virginia courts' construction of Section 18.2-250 [is] controlling, a close

33

4.

The majority also points to state model jury instructions as support for its position, and indeed, in certain categorical approach cases, we have considered them. *See, e.g.*, *Omargharib v. Holder*, 775 F.3d 192, 199 (4th Cir. 2014). However, these instances predate *Mathis*, which sets out a clear three-step test: (1) state court decisions; (2) the statute on its face; and (3) record of conviction. This test does not leave room to entertain debate about how to interpret Virginia's model jury instructions. *See Harbin v. Sessions*, 860 F.3d 58, 67 (2d Cir. 2017) (indicating that, post-*Mathis*, we should consider jury instructions only "to the extent they appear in the record of the prior conviction" (internal quotation marks omitted)). Moreover, on a practical note, here Petitioner had a bench trial, so there are no actual jury instructions in the record for us to consider. In the end, then, model jury instructions have no place in this analysis.

B.

*Mathis* step two: Virginia statute's face

Given that Virginia state court decisions do not speak plainly on the elements-versus-means question, we turn next to the state statute, which, "on its face may resolve

---

examination of those cases is unnecessary." Ante at 13 n.5. Not only is examination of other states' drug laws unnecessary, it is inappropriate. The first prong of the *Mathis* analysis asks us to determine whether Virginia precedent "definitively answers the [elements-versus-means] question." *Mathis*, 136 S. Ct. at 2256. I fail to see how decisions of other circuits, applying other states' precedent to other states' laws, supports the majority's conclusion under *Mathis*, especially given that there are circuits going both ways. That different circuits reached opposing conclusions on the divisibility of similar language comes as no surprise. Each case's divisibility question should be answered by the law of the specific state at issue. Virginia alone is the relevant state source here.

the issue." *Mathis*, 136 S. Ct. at 2256. Two principles guide this analysis. First, "[i]f statutory alternatives carry different punishments, then . . . they must be elements." *Id*. Second, "if a statutory list is drafted to offer 'illustrative examples,' then it only includes a crime's means of commission." *Id.* (citation omitted).

Following these principles as applied to the case at hand, if different punishments were allocated to different specific controlled substances, we could conclude that the controlled substance's exact identity is an element that must be proven to support a particular controlled substance offense conviction. *See Mathis*, 136 S. Ct. at 2249 (explaining that a divisible structure lets a court ascertain "what crime, with what elements, a defendant was convicted of"). But here, Virginia's law divides punishment *by schedule* not by controlled substance, and all the statutory alternatives (controlled substances) within each schedule carry the same punishment. *See* Va. Code Ann. § 18.2-250(A). Petitioner asserts that the element to be proven is the schedule to which a controlled substance belongs. The "controlled substance" element pursuant to Virginia Code section 18.2-250 would be satisfied by proving a defendant possessed either a controlled substance on Schedule I or II (section 18.2-250(A)(a)), Schedule III (section 18.2-250(A)(b)), Schedule IV (section 18.2-250(A)(b1)), Schedule V (section 18.2-250(A)(b2)), or Schedule VI (section 18.2-250(A)(c)). This understanding is consistent with the Virginia courts' language describing individual offenses as "possession of a Schedule I or II controlled substance" and with *Mathis*'s assertion that separate elements (here, schedules) create separate offenses.

*Mathis* also instructs that a nonexhaustive list of alternatives given as "examples" cannot be elements. *Mathis*, 136 S. Ct. at 2256. But *Mathis* does not support the converse: that an exhaustive list *necessarily* contains elements. Virginia's controlled substance schedules each contain a complete list of the controlled substances belonging to that schedule. *See* Va. Code Ann. §§ 54.1-3446 – 54.1-3455. Still, we cannot take *Mathis*'s statement to mean more than what it says. *Mathis* says only that a *non*exhaustive list will not contain elements, which in this case has little bearing. Thus, the face of Virginia's statute does not establish that controlled substance identity is an element of the state's drug possession offense.

## C.

### *Mathis* step three: "Peek" at record of conviction

Where "state law fails to provide clear answers" and the state statute is not clear on its face, we are to move to step three and look to the record of the prior conviction. *Mathis*, 136 S.Ct. at 2256. We are to "peek" at the record "for the sole and limited purpose" of seeing how the statute's listed alternatives appear in the record of conviction. *Id.* (internal quotation marks omitted).

In doing so, we must first identify precisely which documents should be considered to be the record of conviction. In this case, we have been provided a wide array of documents from which to choose: (a) two indictments (original and amended); (b) certificate of analysis offered at trial; (c) transcript of the trial court's oral findings; (d) conviction order; and (e) sentencing order. We can ignore the court's oral findings, as a Virginia trial court "speaks only through its written orders." *Hill v. Hill*, 318 S.E.2d 292,

36

297 (Va. 1984) (citations omitted). Of the remaining documents, all but the certificate of analysis are *Shepard* documents -- being indictments, rulings of law and findings of fact, or "some comparable judicial record of this information." *Shepard*, 544 U.S. at 26.

Per *Mathis*, a record of conviction "could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime." *Mathis*, 136 S. Ct. at 2257. Confusion abounds here.

The original indictment does name a specific schedule I or II controlled substance: MDMA, chemically defined as 3,4-methylenedioxymethamphetamine. The amended indictment displays a specific substance name, though it appears to actually name *two* different substances, and both different than the substance listed in the original indictment -- 3,4 methylenedioxyethcathinone (a scheduled substance known as ethylone) and ethylene (an unscheduled substance). As for the court's conviction order, it also names the unscheduled (albeit specific) substance, ethylene. The conviction order recites the offenses charged in the original and amended indictments as "Possession of MDMA" and "Possession of Ethylene," respectively. A.R. 263. According to the conviction order, the court "f[ou]nd the defendant GUILTY of Possession of Ethylene as charged in Count One of the indictment as amended." *Id.* at 264. Petitioner's sentencing order compounds the confusion. It lists Petitioner's offense as felony "possession of MDMA." *Id.* at 265.

Further, the court's statements from the bench, particularly the final oral pronouncement finding Petitioner "guilty of possession of MDMA *or whatever it is [he] had*," does little to engender confidence that the conviction rested on certainty of the controlled substance's identity beyond a reasonable doubt. A.R. 308 (emphasis supplied).

37

Because all documents in the record of conviction name a specific substance, the Government would like us to conclude that controlled substance identity is therefore an element of the Virginia offense. But *Mathis* counsels that the terms in question might be elements if the records "referenc[e] *one alternative term* to the exclusion of all others." *Mathis*, 136 S. Ct. at 2257. Here, Petitioner's record names at least two of the statute's alternative terms (MDMA and ethylone) and a third substance (ethylene) that is not even scheduled in Virginia. From these materials, I cannot say with any certainty that the judge in Petitioner's bench trial found him guilty of possessing a specific scheduled controlled substance beyond a reasonable doubt. But certainty is what is required. *Shepard*, 544 U.S. at 21–22 (explaining, the "demand for certainty" is "closer" to being met "when . . . the records of the prior convictions used . . . are in each instance free from any inconsistent, competing evidence on the pivotal issue of fact"). *Mathis* makes this clear when setting out the final part of its elements-versus-means test: "record materials will not in every case speak plainly, and if they do not, a [reviewing] judge will not be able to satisfy '[our precedent's] demand for certainty' when determining whether a defendant was convicted of a generic offense." *Mathis*, 136 S. Ct. at 2257 (quoting *Shepard*, 544 U.S. at 21).

The Government and the majority urge us to ignore the reference to "ethylene" in the operative indictment and conviction order as "scrivener's error," but this error managed to identify a completely different chemical compound. With some luck, such an error may have no effect, but where a different compound is identified and stands uncorrected, an immigration court might attach federal consequences to the identity of that controlled substance. What, for example, if a petitioner's conviction involving a nonfederally

38

scheduled controlled substance were switched to a federally scheduled one? The defendant would have "no incentive" to notice or challenge the error as long as both controlled substances were scheduled similarly in Virginia law so the punishments were the same. *Mathis*, 136 S. Ct. at 2252.[6] But "[s]uch inaccuracies should not come back to haunt the defendant many years down the road by triggering a [serious immigration consequence]." *Id.*

## D.

Given the multitude of uncertainties in this record, *Mathis*'s test cannot support the conclusion that controlled substance identity is an element of Virginia's statute. Having evaluated state precedent, the face of the statute, and Petitioner's record of conviction, it is clear to me that the statute cannot be divided based on controlled substance.

First, as for state law, though possession of different controlled substances may constitute multiple violations of Virginia's statute, there is nothing to indicate that specific controlled substance identity must be proven beyond a reasonable doubt in order to support a single charge. If anything, the limited state precedent suggests that the relevant offense has been defined as "possession of schedule I or II controlled substance," rather than

---

[6] The majority's note on this point again misapprehends the problem before us. The majority opinion dismisses the Supreme Court's concern in *Mathis* by saying, "if Bah had been convicted of possessing ethylene, which is not illegal in Virginia, he would have had a powerful incentive to challenge his conviction, as he would have committed no crime." *Id.* Ante at 14–15 n.6. Indeed. But I do not take Petitioner to argue that he was convicted "of possessing ethylene" but rather of a generic offense of possessing a Schedule I or II controlled substance. As between Virginia scheduled substances MDMA and ethylone, Petitioner or any other defendant would have had no reason to dispute the substance's precise identity if the law is indivisible.

39

possession of a specific controlled substance of a proven identity. Second, the statute's face is not determinative. Rather, the breakdown of punishments by schedule (not by individual controlled substance) suggests that a controlled substance's schedule is the element to be proven. Finally, Petitioner's record of conviction does not conclusively demonstrate that controlled substance identity is an element of the offense. Inconsistent references to the statute's alternatives in Petitioner's conviction records make it impossible to conclude that the controlled substance's identity was necessarily proven beyond a reasonable doubt.

At core, the garbled record here underscores the very problems the categorical approach was designed to avoid. *See Descamps*, 570 US at 270 (explaining why reliance on the underlying facts beyond the elements proven is risky, given the lack of incentive to challenge those facts even if they are "downright wrong"). As the majority in *Mathis* explains, the elements-focused test "avoids unfairness to defendants." *Mathis*, 136 S. Ct. at 2252. "Statements of 'non-elemental fact' in the records of prior convictions are prone to error precisely because their proof is unnecessary." *Id.* (quoting *Descamps*, 570 U.S. at 270). Here, the trial court records repeatedly inconsistently and incorrectly refer to the controlled substance in possession, without objection from either the prosecutor or defendant. As the *Mathis* Court explains, "a defendant may have no incentive to contest what does not matter under the law." *Id.* "When that is true, a prosecutor's or judge's mistake as to means, reflected in the record, is likely to go uncorrected." *Id.*

As a result, in my view, the statute at issue here is indivisible for federal purposes.

40

## II.

### The Modified Categorical Approach

Contrary to the appropriate legal analysis outlined above, the majority has instead decided the Virginia statute *is* divisible as to specific controlled substance identity. The majority also concludes that the BIA correctly considered only documents in the "record of conviction" in its modified categorical analysis. Even if the majority is correct that the Virginia statute is divisible, and even if the majority is further correct that the BIA did not look beyond the appropriate records, no application of the modified categorical approach can overcome the ambiguity in Petitioner's record of conviction. And controlling Supreme Court precedent compels the conclusion that the BIA erred by improperly determining that Petitioner is removable based on his ambiguous record of conviction.

Here, to apply the modified categorical approach, we ask whether Petitioner's record of conviction can support removability. The equivalent question was resolved in *Moncrieffe v. Holder*, an immigration case in which the Supreme Court applied the categorical approach to a conviction for marijuana possession. 569 U.S. 184, 187 (2012). The Court answered our question by holding that removal cannot be supported where even consulting a person's record leaves "ambiguity" as to whether "the conviction . . . 'necessarily' involve[d] facts that correspond to an offense punishable" federally. *Id.* at 194–95.

In this case, as detailed above, Petitioner's *Shepard* documents are undeniably ambiguous. The operative indictment appears to list two substances (3,4-methylenedioxyethcathinone and ethylene), the conviction order lists ethylene, and the

sentencing order lists MDMA. (The non-*Shepard* materials do nothing to help: the court's finding at trial was that Petitioner was guilty of "possession of MDMA or whatever it is [he] had." A.R. 308.) Given this record, I cannot say with any certainty what offense and which controlled substance element was the basis of Petitioner's conviction (and neither could the BIA). *See Karimi v. Holder,* 715 F.3d 561, 566 (4th Cir. 2013) (indicating that the Department of Homeland Security bears the burden of establishing removability by clear and convincing evidence). Therefore, it is impossible to determine that his crime of conviction necessarily involved elements that are a categorical match to a federal offense "relating to a controlled substance" as defined in federal law. 8 U.S.C. § 1227(2)(B)(i). Where this is the case, Petitioner's offense cannot support removability pursuant to the INA, and therefore his petition for review should be granted and the BIA's decision to the contrary should be reversed.

From my perspective, the majority's determination otherwise is in error and I must respectfully dissent.

APPENDICES –



# CATEGORICAL APPROACH FLOWCHART (*application to Bah*)

\* Bold emphasis denoting correct path

