COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Ortiz and Causey
Argued at Fairfax, Virginia


STEPHANIE DENISE HILLMON

v.      Record No. 1027-21-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
CHIEF JUDGE MARLA GRAFF DECKER
APRIL 26, 2022

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Carroll A. Weimer, Jr., Judge

Christopher Leibig (Law Office of Christopher Leibig, on brief), for
appellant.

Lindsay M. Brooker, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Stephanie Denise Hillmon appeals her conviction for misdemeanor animal cruelty in

violation of Code § 3.2-6570(A)(i). She asserts that the trial court erred first by permitting the

Commonwealth to amend the indictment against her and later by concluding that the crime is a strict

liability offense. We hold that the trial court did not commit reversible error. Consequently, we

affirm the appellant's conviction.

I. BACKGROUND[1]

The appellant was charged with felony animal cruelty in violation of Code § 3.2-6570(F)

following the death of her dog from heat stroke.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] An appellate court reviewing a challenge to a criminal conviction views the evidence, and all reasonable inferences flowing from that evidence, in the light most favorable to the Commonwealth, the party who prevailed in the trial court. *See Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010).

The evidence at trial proved that on September 10, 2019, the appellant walked her two small dogs for about an hour in humid 92-degree weather. One of the dogs, Bones, was an older obese dog. Near the end of the walk, several witnesses watched as the appellant crossed a six-lane intersection with the dogs. Before they crossed, Bones was lying on his side at the end of his leash, panting and "visibly distressed." When the traffic signal changed, while the dog remained on his side, the appellant "dragg[ed]" the limp dog across the entire intersection, "walking full force" with her arm behind her. At least two drivers yelled to the appellant to indicate that "something [was] wrong with [her] dog." The appellant looked back at the dog, which she was still dragging, and kept walking. After crossing all six lanes of traffic, the appellant "jerked [Bones] up."

Detective Amon Weaver, of the Prince William County Police Department, was on duty and noticed the appellant and her dogs before she crossed the intersection. Due to one dog's obvious distress, Weaver turned his vehicle around and approached the appellant. By the time the detective reached her, she had crossed the street. She was holding the dog, whose stomach was bloated and exhibited abrasions. Additionally, the dog was "hyper-breathing," his tongue was protruding, his eyes were bulging, and he was hot to the touch. Although Bones had white fur, Weaver saw darker areas on the dog's side, which he believed were caused by dragging. Weaver thought that Bones was clearly "about to die" and said so. The appellant responded that "nothing [was] wrong with [her] dog."

Detective Weaver and Lieutenant Meghan Kidwell, an animal control officer who responded to a call for assistance, provided the dog with emergency treatment. Kidwell told the appellant that Bones needed additional medical attention and asked the appellant to either accompany her to a nearby veterinarian's office or call to arrange payment. The appellant replied that she could not go with Kidwell and added that her dogs did not receive treatment at

that veterinarian's office.[2] Throughout the appellant's encounter with law enforcement, she did not seem "very concerned" about her dog. After Weaver told the appellant that Bones had died, she did not react to the death and instead asserted that she was an attorney with no criminal record.

At the close of the Commonwealth's evidence, the appellant made a motion to strike either the "entire case" or "anything above" the misdemeanor in subsection (A) of Code § 3.2-6570, which she characterized as a lesser-included offense. When the judge expressed doubt that the evidence proved a direct causal link between the dragging of the dog and his death, as required to prove the felony under subsection (F), the prosecutor made a motion to amend the indictment to charge a misdemeanor under subsection (A). The court granted the motion over the appellant's objections. It rearraigned the appellant on all lesser offenses in subsection (A), and she again entered a plea of not guilty.

The appellant then presented evidence and testified in her own behalf. She admitted that Bones had sought shade twice on their long walk, including at the intersection at issue immediately before they crossed the street, and that the side of the intersection they were on did not have any shade. Nonetheless, she claimed that when the traffic light changed, the dogs were "ready to go." The appellant admitted that she heard people honking and yelling about her dog. She claimed, though, that she thought Bones was "running behind" her and she did not realize that he was lying down until she reached the fifth of the six lanes. According to the appellant, she thought that she did not "have time to consider" other options, so she simply "pull[ed] Bones to [her]." She then picked up the dog when she reached the sixth traffic lane because people

---

[2] When Bones arrived at the veterinarian's office, his body temperature was too high to be measured, and the treating veterinarian noted additional symptoms of extreme hyperthermia. The veterinarian who performed Bones's necropsy noted that symptoms of heatstroke prior to a dog's death could include seeking shade, increased panting, and collapsing.

continued to honk and yell. The appellant denied Detective Weaver's assertion that Bones's eyes were bulging or that his tongue was sticking out.

On cross-examination, the prosecutor challenged the appellant's representation that she did not notice that she was pulling the twenty-three-pound dog on his side. The appellant repeated her claim that she did not know she was dragging Bones until she reached the fifth lane. She also asserted that one of her psychiatric conditions prevented her from being "aware of everything that a normal person would be aware of."

At the close of all the evidence, the appellant renewed her motion to strike. She argued in part that the evidence did not prove that she had "overdriven" or "deprived the dog [of] anything" or acted intentionally or knowingly. The trial court denied the motion.

Following closing argument, the court found the appellant guilty of the misdemeanor of "ill-treating" the dog. In argument on sentencing that immediately followed, counsel for the appellant "respect[ful]ly disagree[d]" that she "was knowing about what happened." The judge asked whether the misdemeanor required proof that the ill-treatment was intentional. The appellant acknowledged that the statute did not contain such an element but asserted that due process "require[d] more than strict liability." In response, the judge expressly rejected the appellant's testimony that she did not know that she was "dragging the dog across all of the lanes of traffic on its side," and he held that this action "was the ill-treatment, if nothing else." The judge later clarified that he meant that "she [knew] something was going on from the very beginning." The appellant was sentenced to six months in jail with all of that time suspended.

## II. ANALYSIS

The appellant contends that the trial court erred by granting the Commonwealth's motion to amend the indictment from felony animal cruelty in violation of Code § 3.2-6570(F) to

- 4 -

misdemeanor animal cruelty in violation of subsection (A). She also asserts that the court erroneously applied a strict liability standard when it convicted her of the misdemeanor offense.

## A. Amendment of the Indictment

The appellant argues that the trial court erred by granting the Commonwealth's motion to amend the indictment because the amendment impermissibly changed the nature of the offense. The Commonwealth asserts that this argument is procedurally barred under Rule 5A:18.

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." To meet the requirements of the contemporaneous objection rule, an objection must be both timely and *specific*. *See Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). The reason for the requirement is twofold. *See id.* First, such an objection "gives the opposing party the opportunity to meet the objection *at that stage of the proceeding*." *Id.* at 744 (quoting *Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010) (emphasis added)). Second, a timely and specific objection "afford[s] the trial court an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals." *Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010); *see Bethea*, 297 Va. at 743.

The appellant suggests that allowing amendment of the indictment after the close of the Commonwealth's evidence was error because the amendment "changed the nature or character of the offense" in contravention of Code § 19.2-231. That code section provides in pertinent part that in the case of "any variance between the allegations" in an indictment and "the evidence offered in proof thereof," the trial court may "permit amendment" of the indictment if certain conditions are met. Code § 19.2-231. First, the amendment must occur "before the jury returns

a verdict or the court finds the accused guilty or not guilty." *Id.* Second, the amendment must not "change the nature or character of the offense charged." *Id.*[3]

In the trial court, the appellant failed to specifically raise the "nature or character of the offense" argument that she now poses. Although she was not required to use these specific words, the appellant was required to state her objection with sufficient precision to permit the trial court, and the opposing party, to understand it and take any necessary action. *See Jones v. Commonwealth*, 71 Va. App. 597, 607 (2020) (citing *Byrd v. Commonwealth*, 50 Va. App. 542, 549 (2007) (citing *Lash v. Cnty. of Henrico*, 14 Va. App. 926, 929 (1992) (*en banc*))). When the trial court first raised the possibility of amending the indictment, the appellant specifically asserted that "jeopardy . . . ha[d] attached" and "there would be no new trial." This statement indicated, at most, an objection to an amendment that would require a new trial, which was not the situation here. The Commonwealth had already presented its case and, significantly, did not seek to reopen the case to present additional evidence due to the amendment of the indictment.

The appellant next objected to the proposed amendment based on timing, after the close of the Commonwealth's evidence, in essence asserting that permitting the amendment rather than granting the appellant's motion to strike was unfair. She further argued that there was no "variation or defect" between the indictment and the evidence. The judge disagreed with that characterization, noting that if no variance existed between the indictment and the proof, the appellant's motion to strike would have no merit. The appellant replied that a lack of sufficient evidence did not necessarily qualify as a variance permitting an amendment.

After the appellant raised these various arguments, none of which addressed the statute's "nature or character" language, the prosecutor made a formal motion to amend the indictment.

---

[3] The statute further provides that if the trial court finds that an amendment "operates as a surprise to the accused, he shall be entitled, *upon request*, to a continuance . . . for a reasonable time." Code § 19.2-231 (emphasis added). The appellant did not request a continuance.

The appellant again objected "insofar as [the amendment came] after the close of evidence." The judge pointed out that Code § 19.2-231 expressly permitted amendment at any time before he found the accused guilty or not guilty.[4] The appellant then "agree[d]," contrary to her previous assertion, that the statute permitted amendment "at any time before the Court f[ound] the accused guilty." She emphasized at that time that the statute was "permissive[,] . . . not mandatory," and that she was "suggesting that the Court . . . not amend and simply strike" the charge.

At no time during this lengthy discussion did the appellant mention the statutory requirement that an amendment was permitted only if it did not "change the nature or character of the offense charged" or convey to the trial court that allowing the amendment would contravene this requirement. *See* Code § 19.2-231.[5] Accordingly, the record establishes that the appellant failed to preserve her right to challenge whether the indictment changed the nature and character of the offense. We hold that Rule 5A:18 bars our consideration of this assignment of error on the merits.[6]

---

[4] The appellant concedes this point on appeal. *See generally Edwards v. Commonwealth*, 218 Va. 994, 1003 (1978) (upholding an amendment to an indictment that occurred after the prosecutor had finished presenting his case).

[5] In fact, the appellant took what amounted to a contrary position, representing that the court had *discretionary* authority to amend the indictment and urging it not to exercise that authority. Logically, if the trial court's authority to amend the indictment on the facts of this case was discretionary, i.e., *within* the range of permissible choices under Code § 19.2-231, then permitting the amendment, by definition, met the requirements of the statute. *Cf. Reyes v. Commonwealth*, 297 Va. 133, 139-40 (2019) (noting that a court abuses its discretion if it applies a statute in a way that exceeds the outer limits of the range of options that the statute provides). Consequently, by characterizing the trial court's authority to permit the amendment as discretionary, the appellant implicitly conceded that the proposed amendment would not, in fact, change the nature or character of the offense. *Cf. Rowe v. Commonwealth*, 277 Va. 495, 502 (2009) (holding that a litigant "may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory" (quoting *Cangiano v. LSH Bldg. Co.*, 271 Va. 171, 181 (2006))).

[6] The appellant does not ask the Court to apply the good cause or ends of justice exception to Rule 5A:18, and the Court will not raise either exception *sua sponte*. *See Jiddou v. Commonwealth*, 71 Va. App. 353, 368 n.8 (2017).

### B. Strict Liability Under Code § 3.2-6570(A)(i)

The appellant contends that the trial court "erred by applying a strict liability standard" when it convicted her of violating Code § 3.2-6570(A)(i).

Review of the context of the appellant's claim is important to the resolution of this assignment of error. After the trial court found the appellant guilty of ill-treating the dog under subsection (A)(i), counsel for the appellant disagreed that she did so knowingly. The judge replied, "Does the statute require that she *intentionally* ill-treat[ed] the dog?" (Emphasis added). The appellant asserted that the Due Process Clause of the Fifth Amendment "requires more than strict liability." In response, the judge expressly found that "if nothing else, dragging the dog across all of the lanes of traffic on its side [was] ill-treating the dog . . . in violation of this statute."[7] The judge acknowledged the appellant's testimony disclaiming an awareness of what she was doing but found it was "inconceivable . . . to believe that she would not have known that something was going on," "from the very beginning," "when she was pulling twenty[-]three pounds on its side."

The record, therefore, suggests that the court's question about strict liability was merely an inquiry based on the appellant's argument. The court went on to rule very clearly that the appellant had knowledge of the dog's condition and dragged it across six lanes of traffic. Viewed in context, the record establishes that regardless of what the court thought about strict liability, even assuming it made a ruling on that basis, it made an alternate ruling that supports the conviction.

"When appellate courts affirm, they 'enforce not a [lower] court's reasoning, but the court's *judgment*.'" *Rickman v. Commonwealth*, 294 Va. 531, 542 (2017) (alteration in original)

---

[7] The judge observed that there were "other things to point to" in the record, as well, but he specifically noted only the dragging of the dog.

(quoting *Alexandria Redev. & Hous. Auth. v. Walker*, 290 Va. 150, 156 n.1 (2015)). Consequently, an appellate court may affirm a trial court's ruling on an alternate legal ground under appropriate circumstances. *See Cumbo v. Dickenson Cnty. Dep't of Soc. Servs.*, 62 Va. App. 124, 127 n.2 (2013) ("When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court and, if we so find, need not address the other ground."); *cf. Geouge v. Traylor*, 68 Va. App. 343, 377-78 (2017) (affirming an adoption because even if the alleged error, a failure to provide statutory notice, had occurred, that fact "would not have changed the circuit court's ultimate decision").

Affirming on an alternate ground is proper "when [the record] reflects two things. First, it must show that all the evidence necessary to th[e] alternate ground was before the trial court. Second, that evidence must have been undisputed, or the record must show how the trial court resolved any dispute." *Vandyke v. Commonwealth*, 71 Va. App. 723, 732 (2020) (citations omitted). When the trial court expressly rules on two grounds in the alternative, it makes the necessary underlying findings of fact related to both grounds, at least implicitly. *See Burrell v. Commonwealth*, 58 Va. App. 417, 427 (2011) (recognizing that certain subsidiary factual findings were implicit in one of the trial court's express findings); *see also Nationwide Mut. Ins. Co. v. Hylton*, 260 Va. 56, 64 (2000) (observing in a tort action that the trial court made implicit findings of fact).

The appellant argues that a conviction under Code § 3.2-6570(A)(i) requires at least proof of knowledge. Regardless of the trial court's inquiry about strict liability, it found expressly that the appellant's ill-treatment of her dog was "know[ing]." Accordingly, if the evidence, viewed under the proper standard, supports the trial court's express finding that the appellant acted knowingly, this alternate factual ground supports her conviction. In turn, if this factual ground

supports the appellant's conviction, this Court will not consider her claim that the trial court ruled that the offense of misdemeanor animal cruelty under Code § 3.2-6570(A)(i) is a strict liability offense and erred by doing so. *See McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018) (noting that an appellate court must decide each case on the best and narrowest ground).

Settled legal principles provide that "[t]he fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility" as well as "the weight to be given their testimony." *Hamilton v. Commonwealth*, 279 Va. 94, 105 (2010) (quoting *Commonwealth v. Taylor*, 256 Va. 514, 518 (1998)). The trial court, sitting as the finder of fact, "may accept or reject the testimony" of any witness "in whole or in part." *Perkins v. Commonwealth*, 31 Va. App. 326, 331 (2000). "Additionally, in drawing inferences from the evidence, the fact finder may conclude . . . [that the] defendant['s] . . . false statements establish that [she] has lied to conceal [her] guilt." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019). Once the finder of fact concludes that the defendant's testimony is not credible, it may treat her "prevarications as 'affirmative evidence of guilt.'" *Sierra v. Commonwealth*, 59 Va. App. 770, 784 (2012) (quoting *Armstead v. Commonwealth*, 56 Va. App. 569, 581 (2010)).

Here, the trial court expressly rejected the appellant's testimony that she was unaware that she dragged the dog across the entire six-lane intersection. The court, as the finder of fact in a bench trial, was tasked with assessing her credibility, and it was within the court's authority to conclude that this testimony was false. In addition to assessing the appellant's demeanor on the stand, the court was entitled to consider the ways in which her testimony conflicted with that of other witnesses, whose testimony the trial court was entitled to find credible. For example, the appellant claimed that she picked the dog up and carried him when she reached the sixth lane of traffic, whereas an eyewitness testified that she dragged him "across all [six] lanes" and simply "jerked [him] up" when she reached the other side. She also denied the assertion of Detective

Weaver that Bones's eyes were bulging and his tongue was protruding when Weaver arrived. Finally, once the court found that the appellant testified falsely that she was unaware that she was dragging the dog, it was further entitled to conclude that this false testimony provided "affirmative evidence" that she was in fact aware of how she was treating him. *See Sierra*, 59 Va. App. at 784 (quoting *Armstead*, 56 Va. App. at 581).

In short, assuming that the offense required proof of knowledge, that requirement was satisfied by the trial court's finding that the appellant was aware of her actions that constituted ill-treatment of her dog. Consequently, we affirm based on the trial court's alternative findings, and we do not consider the appellant's claim that the court erred by ruling on strict liability grounds.

## III. CONCLUSION

The appellant's assignment of error challenging the amendment of the indictment is procedurally barred by Rule 5A:18 because she did not assert below that the amendment changed the nature and character of the offense. Additionally, we do not consider any ruling that the trial court may have made on strict liability grounds because it concluded that the appellant's testimony was not credible. That rejection of the appellant's testimony provided affirmative evidence that she was fully aware that she dragged the dog across the six-lane intersection on its side. Consequently, the findings made by the trial court satisfy the alleged intent requirement advanced by the appellant. On these bases, we hold that she failed to establish that the trial court committed reversible error, and we affirm the appellant's conviction.

*Affirmed.*